**Angelo PRUNELLA, Plaintiff,**

v.

**CARLSHIRE TENANTS, INC.
and Garthchester Realty,
Ltd., Defendants.**

**No. 99CIV.4959(WCC).**

United States District Court,
S.D. New York.

May 9, 2000.

Law Offices of Leonard Buddington, Jr., Yonkers, New York, for plaintiff, Leonard Buddington, Jr., of counsel.

Hoey, King, Toker & Epstein, New York City, for defendants, Thomas M. McNally, of counsel.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Angelo Prunella, a Jehovah's Witness, brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, claiming that defendants Carlshire Tenants, Inc. and Garthchester Realty, Ltd. terminated his employment because of his religious affiliation. Defendants now move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and for summary judgment pursuant to Fed.R.Civ.P. 56, claiming that: (1) defendant Carlshire Tenants, Inc. ("Carlshire") is not an employer as defined by Title VII and therefore this Court lacks subject matter jurisdiction; (2) plaintiff is precluded from bringing this action by a stipulation of settlement; and (3) plaintiff fails to establish a prima facie case of discrimination. For the reasons that follow, Carlshire's motion to dismiss for lack of subject matter jurisdiction and defendants' motion for summary judgment are granted.

### BACKGROUND

Plaintiff has been a Jehovah's Witness since 1984. (Pl. Rule 56.1 Stmt. ¶ 1.)[1] Plaintiff began working as the superintendent of a cooperative building located at 1–3 Washington Square in Larchmont, New York (the "Cooperative") on July 18, 1994. (*Id.*) By letter dated May 6, 1997, John A. Bonito, management agent for Carlshire, advised plaintiff that his employment as building superintendent was terminated, effective May 7, 1997. (McNally Decl., Ex. A.) The shareholders of the Cooperative were notified of plaintiff's termination by a letter from the Cooperative's board of directors. (*Id.*)

On May 12, 1997, plaintiff, through his union representative Anthony Formisano, served notice of intent to arbitrate regarding plaintiff's discharge pursuant to a collective bargaining agreement between plaintiff's employer and his union. (*Id.*, Ex. B.) The arbitration was scheduled for

---

1. Defendants contend that this Court should disregard plaintiff's amended Rule 56.1 statement, as some of the assertions therein are not supported by citations to the record. Although failure to comply with Local Rule 56.1 is grounds for deeming admitted the facts contained in defendants' Rule 56.1 statement, we are not required to do so. *See Balut v. Loral Electr. Sys.*, 988 F.Supp. 339, 343 (S.D.N.Y.1997) (Conner, J.), *aff'd*, 166 F.3d 1199, 1998 WL 887194 (2d Cir.1998). Because we find support for plaintiff's assertions in plaintiff's sworn affidavit and in the record, we decline to disregard plaintiff's Rule 56.1 statement.

June 13, 1997. (*Id.*, Ex. C.) On May 14, 1997, Bonito wrote to Formisano that the Cooperative's board of directors had authorized him to make an offer of settlement of $10,000. (*Id.*, Ex. N.) On May 23, 1997, plaintiff and defendants entered into a stipulation pursuant to which the parties agreed "that Angelo Prunella shall receive from the employer the sum of $11,000.00 in full and complete payment for any and all claims." (*Id.*, Ex. D.) Plaintiff further agreed that:

I, Angelo J. Prunella, have read all the terms of the foregoing agreement, and have agreed to them voluntarily, being fully aware that upon acceptance of the money involved in this settlement, I shall have no recourse against the employer, nor can this agreement be opened in the future.

(*Id.*)

The stipulation also provided that plaintiff would "vacate his apartment on August 1, 1997 or before if possible" and that plaintiff would "get unemployment and a letter of reference from management." (*Id.*) Neither party was represented by counsel during the negotiation of the stipulation, although the stipulation was signed by both plaintiff and his union representative. (*Id.*)

By letter dated June 2, 1997, the president of plaintiff's local withdrew plaintiff's arbitration case, stating that "[t]he reason for such withdrawal is that this matter has been settled." (*Id.*, Ex. E.) Plaintiff received payments from defendants totaling $11,000, the amount due under the settlement agreement. (Pl. Rule 56.1 Stmt. ¶ 8.)

## DISCUSSION

### I. *Carlshire's Status as an Employer Under 42 U.S.C. § 2000e*

As an initial matter, defendants move to dismiss this action as to Carlshire for lack of subject matter jurisdiction. Defendants claim that Carlshire is not an "employer" as defined by Title VII.

In deciding whether to dismiss an action pursuant to Fed.R.Civ.P. 12(b)(1), the Court must accept as true all material factual allegations in the complaint and refrain from drawing inferences in favor of the party contesting jurisdiction. *Serrano v. 900 5th Ave. Corp.*, 4 F.Supp.2d 315, 316 (S.D.N.Y.1998). However, the Court is not limited to the complaint. "On a motion under Fed.R.Civ.P. 12(b)(1) challenging the district court's subject matter jurisdiction, the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." *Antares Aircraft, L.P. v. Federal Republic of Nigeria*, 948 F.2d 90, 96 (2d Cir.1991), *vacated on other grounds*, 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992).

A requirement for jurisdiction of a Title VII case is that the defendant must meet the statutory definition of "employer." *Serrano*, 4 F.Supp.2d. at 316; *see also E.E.O.C. v. Arabian Am. Oil Co.*, 499 U.S. 244, 248, 111 S.Ct. 1227, 1231, 113 L.Ed.2d 274 (1991) (describing "employer" as defined by Title VII as a "jurisdictional term[ ]"). Title VII applies to "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person...." 42 U.S.C. § 2000e(b).

Defendant Carlshire claims that it is not an "employer" for purposes of Title VII because it employs fewer than fifteen people. (*See* Bonito Aff. ¶ 27; McNally Decl., Ex. H.) Plaintiff claims, however, that Carlshire and Garthchester Realty, Ltd. "are inextricably intertwined and should be held jointly liable in this lawsuit." (Pl. Mem.Opp.Summ.J. at 9.)

This issue was squarely addressed by this court in *Serrano*. There, a worker at a residential property sued both the building owner and the property manager for employment discrimination. The building owner argued it could not be sued as an "employer" under Title VII because it employed less than fifteen people. *See id.* at 318. The court held that because the fifteen-person rule serves in part to mitigate

the burden of compliance and potential litigation costs associated with Title VII for small entities, an entity with less than fifteen employees may not be held responsible under Title VII with a larger entity as a joint employer. *See id.*

■ Thus, because Carlshire's employees cannot be counted with Garthchester Realty, Ltd.'s employees, Carlshire falls outside Title VII's definition of "employer." Accordingly, the instant action is dismissed as to Carlshire for lack of subject matter jurisdiction.

## II. *Summary Judgment Standard*

Defendants move for summary judgment pursuant to Fed.R.Civ.P. 56, claiming that plaintiff is barred from bringing this action by the stipulation discussed above and that plaintiff has failed to make out a prima facie case of discrimination. Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. *See Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997). In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all reasonable inferences against the movant. *See id.* The court's role at this stage of the litigation is not to decide genuine issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1224 (2d Cir.1994).

## III. *The Stipulation of Settlement*

Defendants claim that plaintiff's claims are barred by the stipulation of settlement into which the parties entered on May 23, 1997. For the reasons that follow, we agree.

The Second Circuit has stated that "[a] settlement is a contract, and once entered into is binding and conclusive." *Janneh v. GAF Corp.,* 887 F.2d 432, 436 (2d Cir. 1989), *abrogated on other grounds by Digital Equip. Corp. v. Desktop Direct, Inc.,* 511 U.S. 863, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994). The Supreme Court has held that under Title VII, an employee may waive a claim for discrimination as long as "the employee's consent to the settlement was voluntary and knowing." *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 52 n. 15, 94 S.Ct. 1011, 1021 n. 15, 39 L.Ed.2d 147 (1974). The Second Circuit has stated that "voluntary compromises of Title VII actions enjoy a presumption of validity . . . and should therefore be approved unless they contain provisions that are unreasonable, unlawful, or against public policy." *Kirkland v. New York State Dep't of Correctional Servs.,* 711 F.2d 1117, 1128–29 (2d Cir.1983) (internal citations and quotations omitted).

## A. *Knowing and Voluntary Consent*

In *Bormann v. AT & T Communications, Inc.,* 875 F.2d 399, 403 (2d Cir.1989), the Second Circuit set forth a "totality of the circumstances" standard, which is somewhat more stringent than the analysis called for under ordinary contract law, for determining whether a waiver of federal claims was made knowingly and willfully.[2] The factors to be considered are:

1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was

2. Although *Bormann* was decided in the context of a claim pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.,* the *Bormann* Court recognized the appropriateness of analyzing the ADEA to Title VII in the context of releases. 875 F.2d at 402. *See also Nicholas v. Nynex, Inc.,* 929 F.Supp. 727, 730 (S.D.N.Y.1996) (applying *Bormann* factors to waiver of Title VII claim).

represented by or consulted with an attorney, 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law, 7) whether an employer encourages or discourages an employee to consult an attorney, and 8) whether the employee had a fair opportunity to do so. *Id.* at 403. The court stated that the list is not exhaustive; nor must all of the factors be satisfied before a release is deemed enforceable. *Id.; see also Nicholas,* 929 F.Supp. at 730.

■ In the instant case, after examining the undisputed facts in the light of the standard set forth in *Bormann,* we conclude that plaintiff signed the stipulation knowingly and voluntarily.

Plaintiff, who has a high school degree and is a certified plumber, acknowledges that a high school diploma generally is sufficient to satisfy the first element set forth in *Bormann.* However, plaintiff claims that the fact plaintiff "had never before been involved in or prosecuted any lawsuit prior to this case ... should be a significant factor in considering the plaintiff's ability to fully understand the consequences of a settlement agreement." (Pl. Mem.Opp.Summ.J. at 5.)

We note that the stipulation is drafted in clear and comprehensible language. It provides, in pertinent part:

1. That the employment of Angelo Prunella employed by Carlshire Tenants Inc., c/o Garthchester Realty Ltd. is terminated on May 7, 1997.

2. That Angelo Prunella shall receive from the employer the sum of $11,000.00 in full and complete payment for any and all claims. Angelo Prunella shall receive $6,000.00 on the day this stipulation is signed and the balance of $5,000.00 he shall receive when he turns in all keys, and vacates the apartment.

(McNally Decl., Ex. D.)

As discussed above, at the bottom of the document, plaintiff signed his name to a clause stating:

I, Angelo Prunella, have read all the terms of the foregoing agreement, and have agreed to them voluntarily, being fully aware that upon acceptance of the money involved in this settlement, I shall have no recourse against the employer, nor can this agreement be opened in the future.

(*Id.*)

This Court has held that a plaintiff with a high school education and management experience was capable of understanding a straightforward release much like the stipulation at issue here. *See Nicholas,* 929 F.Supp. at 731. Plaintiff served as a building superintendent for three years and professed in his resume to have "excellent communication ... skills." (McNally Decl., Ex. I.) Clearly, plaintiff was capable of understanding the text and ramifications of the stipulation he signed.

Plaintiff claims that the second *Bormann* factor also militates against finding the agreement enforceable, as he "did not have access to the agreement at any time other than the day he signed it at his union's office, and at that time he had only fifteen minutes to sign it." (Pl.Mem. Opp.Summ.J. at 5.) Plaintiff further claims that he was not advised to seek the advice of counsel. (*Id.*)

As to plaintiff's claim that he had only fifteen minutes to spend with the document, we note that defendant's agent Bonito states in an affidavit that Bonito first met with plaintiff and Formisano, plaintiff's union representative, on May 5, 1997. (Bonito Aff. ¶ 9.) Bonito claims that at that meeting, plaintiff expressed his interest in discussing settlement. (*Id.*) On May 14, 1997, defendants offered plaintiff a $10,000 settlement. (*Id.* ¶ 12.) Bonito claims that further negotiations resulted in the $11,000 settlement and terms set forth in the May 23 stipulation. (*Id.* ¶ 14.) Plaintiff does not contest that these negotiations took place. Accordingly, plaintiff had several weeks to ponder settlement even if he did not see the exact terms until the date he signed the agreement. We note also that although plaintiff was not represented by

counsel, his union representative signed the stipulation, and, according to Bonito, typed the stipulation. Bonito states that defendants were not represented by counsel during the negotiating and signing of the stipulation, but that he himself led the negotiations on defendants' behalf. (Bonito Aff. ¶ 19.)

We further note that plaintiff admits that under the stipulation, he received about $5,000 more than he was entitled to under the terms of the collective bargaining agreement. (Pl.Mem.Opp.Summ.J. at 6.) There is no evidence that defendants discouraged plaintiff from seeking the advice of counsel, and plaintiff states in his opposition brief that he had a short discussion with a union lawyer prior to signing the agreement. (*See id.*)

In looking at the totality of the circumstances of plaintiff's waiver of his claims against defendants according to the standard set forth in *Bormann,* we find that plaintiff's waiver was made knowingly and voluntarily.

### B. *Release of Title VII Claims*

Plaintiff claims that because the stipulation did not specifically state that he waived any anticipated Title VII claims, "it is not unreasonable for the Plaintiff to believe that the consideration he received in the context of these settlement negotiations were limited solely to his relinquishing any claim he may have had to be reinstated to his former position." (Pl. Mem.Opp.Summ.J. at 6.)

In a case in which the buyer of a hazardous waste site who sought contribution from the seller contested the validity of a broadly-drafted release, the Second Circuit held that the release, although drafted prior to the enactment of the Comprehensive Environmental Response, Compensation and Liability Act and failing to mention environmental liabilities, barred the buyer from seeking contribution. *Olin Corp. v. Consolidated Aluminum Corp.,* 5 F.3d 10 (2d Cir.1993). The Circuit first decided that although federal law governs the validity of releases of federal claims, the court would look to state law to provide the content of federal law. *Id.* at 15.

Pursuant to New York law, the courts must "discern the intent of the parties to the extent their intent is evidenced by their written agreement." *Id.* (internal citations and quotations omitted). " 'Where the intention of the parties is clearly and unambiguously set forth, effect must be given to the intent as indicated by the language used.' " *Id.* (*citing Slatt v. Slatt,* 64 N.Y.2d 966, 967, 488 N.Y.S.2d 645, 477 N.E.2d 1099 (N.Y.1985)).

In the instant case, the language of the stipulation clearly was broad enough to encompass liability pursuant to Title VII. The language evidences the parties' "clear and unmistakable intent" that plaintiff would have no further recourse against defendants pursuant to the agreement. The agreement specified "[t]hat Angelo Prunella shall receive from the employer the sum of $11,000.00 in full and complete payment for any and all claims." The breadth of this language belies plaintiff's assertion that he believed he was relinquishing only claims to be reinstated to his former position.

We conclude that the agreement contemplated that plaintiff would waive all claims, including the instant claim, and that defendants are therefore entitled to a summary judgment dismissing the action.

Thus, we need not address defendants' argument that plaintiff has failed to make out a prima facie case of employment discrimination.

### CONCLUSION

For the reasons stated above, Carlshire's motion to dismiss and defendants' motion for summary judgment are granted. The Clerk of the Court shall enter judgment for defendants dismissing the complaint in its entirety with prejudice. SO ORDERED.