**Judith RUSSO**

v.

**LIGHTNING FULFILLMENT, INC.**

**No. 3:01CV677(JBA).**

United States District Court,
D. Connecticut.

April 18, 2002.

Thomas W. Bucci, Willinger, Willinger & Bucci, Bridgeport, CT, for Plaintiff.

Eliot B. Gersten, Gersten & Clifford, Hartford, CT, for Defendant.

## MEMORANDUM OF DECISION [# 11]

ARTERTON, District Judge.

Plaintiff Judith Russo alleges that she was sexually harassed by Thomas Trombetto, the president of her former employer, Lightning Fulfillment, Inc., and that after she filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC"), she was retaliated against and eventually constructively discharged. She brings this suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a–60.

Defendant Lightning Fulfillment, Inc. has moved for summary judgment under Fed.R.Civ.P. 56, or alternatively for judgment under Fed.R.Civ.P. 12(b), on the basis that it is not an employer within the meaning of Title VII because it employs fewer than fifteen regular employees. Defendant also asserts that plaintiff's failure to name Tompac Inc. as a co-defendant requires dismissal of the state and federal sex discrimination claims, and that the failure to exhaust administrative remedies by including allegations of retaliation in the CHRO and EEOC complaints requires dismissal of the state and federal retaliation claims. Finally, defendant contends that the decision of the Connecticut Employment Security Appeals Division denying plaintiff unemployment benefits collaterally estops plaintiff from arguing that her termination was in retaliation for the filing of the CHRO complaint. For the reasons discussed below, defendant's motion is DENIED.

## I. Factual Background [1]

Russo was formerly employed by defendant as a supervisor. In December 1999, Thomas Trombetto ("Trombetto"), the president of Lightning Fulfillment, allegedly began sexually harassing plaintiff. Despite intermittent promises that the harassment would stop, Trombetto continued to subject plaintiff to unwanted sexual advances until May 26, 2000, when plaintiff cleared out her office with the intent of leaving employment with Lightning Fulfillment because of the harassment. Trombetto pleaded with her to stay, and promised that the harassment would stop. Plaintiff subsequently decided not to quit, but filed a complaint with the Connecticut Commission on Human Rights and Opportunities and the Equal Employment Opportunity Commission on or about June 8, 2000. While the harassment stopped after plaintiff's complaint was filed, Trombetto then began retaliating against plaintiff, pressuring her to withdraw the complaint, subjecting her to unfair criticism, and threatening to withhold raises for any employees until plaintiff withdrew the complaint. Finally, in August 2000, finding the retaliation intolerable, plaintiff quit. Plaintiff did not amend her CHRO or EEOC complaints to include any allegations of retaliation.

On September 14, 2000, the Administrator for the Connecticut Employment Security Division ruled that plaintiff's separation from her employment with defendant was "non-disqualifying," and awarded unemployment benefits effective the week ending September 2, 2000. Lightning Fulfillment appealed, and at a hearing at which plaintiff did not appear, the Appeals Referee found that plaintiff had voluntarily left suitable employment without good cause.[2]

Defendant Lightning Fulfillment was incorporated under the laws of the State of Connecticut on January 18, 1996, and has two shareholders, Trombetto and Stacy Trombetto. Tompac Packaging, Inc. ("Tompac") was incorporated under the laws of the State of Connecticut on January 6, 1987, and is owned by and Patricia Trombetto. Both defendant and Tompac maintain separate books and records, including payrolls, payables, receivables, checking accounts, contracts and purchase orders.

During the relevant time period, Lightning Fulfillment shared office space with Tompac, although each company paid its proportion of the rent for the facilities. Tompac and Lightning Fulfillment are both owned, managed, and controlled by Trombetto and his family. Trombetto administers and operates the business of both Tompac and Lightning Fulfillment. Trombetto is also the managing officer responsible for the daily business activities and all personnel matters for both Lightning Fulfillment and Tompac. In addition, Lightning Fulfillment and Tompac have the same address and phone number, share a receptionist and warehouse, employed the same salesperson, and share common office facilities and equipment, including trucks. Trombetto's mother, although on the books of Tompac, reported to plaintiff each day for work assignments. Similarly, Trombetto's daughter, also listed on Tompac's books, frequently reported to plaintiff for assign-

---

**1.** As defendant's motion is directed primarily towards the alleged absence of the requisite number of employees to state a claim under Title VII, the following discussion is limited to those facts relevant to defendant's motion; other facts, undisputed for purpose of this motion, are mentioned only as background.

**2.** In her opposition brief, plaintiff states that she did not attend the appeal hearing because she had already found another job, and thus no longer sought unemployment benefits. *See* Mem. in Opp. to S.J. at 4 n. 1.

ments. Finally, plaintiff and other Lightning Fulfillment employees performed day to day tasks for Tompac, including opening the business in the morning, assisting in meeting the demands of either company, providing receptionist services, meeting shipping and receiving duties and supplying the bookkeeping services for both companies. However, according to an affidavit submitted by Thomas Trombetto, whenever either Tompac or Lightning Fulfillment performs work for the other company, the company performing the work is paid for any goods and services provided.

It is undisputed that during the two years prior to plaintiff's termination, Lightning Fulfillment employed fewer than fifteen regular employees. It is further undisputed that Lightning Fulfillment and Tompac together employed more than fifteen employees during this same period.

## II. Standard

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law," Fed.R.Civ.P. 56(c). It may be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). An issue of fact is "material" for these purposes if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In assessing the record, the Court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Ametex Fabrics, Inc. v. Just In Materials, Inc.*, 140 F.3d 101, 107 (2d Cir.1998) (citations omitted).

## III. Discussion

### A. Title VII sexual harassment claims

Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). The Second Circuit has recently held that this requirement is not jurisdictional, "at least as long as a plaintiff ... makes a non-frivolous claim that the defendant is a covered employer." *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 365 (2d Cir.2000); *see also Williams v. Greendolf, Inc.*, 735 F.Supp. 137, 140 (S.D.N.Y.1990) (holding that the fifteen employee rule is not a pleading requirement). "Of course, a Title VII defendant wishing to defeat a plaintiff's claim on the ground that it lacks fifteen employees is normally entitled to seek dismissal if the complaint shows on its face that the element of statutory coverage is lacking, or to seek summary judgment on that issue if undisputed facts can be presented to defeat coverage." *Da Silva*, 229 F.3d at 365–66.

Here, plaintiff's complaint alleges that "[t]he defendant is an employer, which engages in an industry affecting commerce and, upon information and belief, employs more than 15 regular employees." Compl. at ¶ 8. The complaint also alleges that "[t]he defendant is an employer within the meaning of Section 701(b) of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. § 2000e(b)." *Id.* at ¶ 9.

Defendant claims that because it is undisputed that Lightning Fulfillment employed between five and eight people during the two years prior to plaintiff's termination, it is entitled to summary judgment. Plaintiff, in turn, argues that a jury could find that Lightning Fulfillment was a covered employer under a "single employer" theory because the em-

ployees of Tompac should be considered employees of Lightning based on the close relationship between the two companies.

■■■ "A 'single employer' situation exists 'where two nominally separate entities are actually part of a single intergrated enterprise so that, for all purposes, there is in fact only a single employer.'" *Clinton's Ditch Co-op Co., Inc. v. N.L.R.B.,* 778 F.2d 132, 137 (2d Cir.1985) (*quoting N.L.R.B. v. Browning–Ferris Industries,* 691 F.2d 1117, 1122 (3d Cir.1982)). This standard applies when "separate corporations are not what they appear to be, that in truth they are but divisions or departments of a 'single enterprise.'" *Id.* (*quoting N.L.R.B. v. Deena Artware, Inc.,* 361 U.S. 398, 402, 80 S.Ct. 441, 4 L.Ed.2d 400 (1960)). Factors to consider in determining whether two companies are so related as to be considered a "single employer" include: "interrelation of operations, common management, centralized control of labor relations and common ownership." *Radio & Television Broadcast Technicians Local Union 1264 v. Broadcast Service of Mobile, Inc.,* 380 U.S. 255, 256, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965) (per curiam). According to plaintiff, in light of Thomas Trombetta's role in both companies, all these factors support the conclusion that Tompac and defendant should be considered a single employer.

■■■ In response, defendant argues only that plaintiff cannot now assert a single employer theory because she failed to allege such a theory in her CHRO and EEOC complaints, failed to name Tompac as a defendant in this action and failed to allege a single employer theory in her complaint in this action. However, in *Da Silva,* it appears that the plaintiff's complaint alleged only that her employer was a covered employer. In response to the defendants' motion to dismiss, the plaintiff then argued that her employer and its Japanese parent company should be considered a single employer for purposes of Title VII. Because the Second Circuit found that the employer "could plausibly be regarded with its parent company as a single employer, thereby potentially meeting the fifteen-employee requirement," it concluded that the district court had subject matter jurisdiction over the action and thus properly exercised supplemental jurisdiction over plaintiff's state law claims. *Da Silva,* 229 F.3d at 365. The court noted that the plaintiff's "ultimate failure to prove single employer status is not a ground for dismissing for lack of subject matter jurisdiction or even for failure to state claim; it is a ground for defeating her federal claim on the merits." *Id.*

There is thus no basis under Second Circuit law for defendant's position that plaintiff's failure to plead a single employer theory or name Tompac in her complaint deprives this Court of jurisdiction, or requires a grant of summary judgment in plaintiff's favor. Accordingly, as a jury could conclude that defendant and Tompac were a single employer from the facts alleged by plaintiff, defendant's motion for summary judgment is denied on this ground.

■■ The Court also rejects defendant's argument that Tompac is an indispensable party under Fed.R.Civ.P. 19. As a threshold matter, the Court looks first to Rule 19(a), which provides the specific criteria to be used in deciding if it is necessary to join a party. Defendant has failed as a threshold matter to establish that Tompac is a necessary party under Rule 19(a).[3]

---

**3.** Fed.R.Civ.P. 19(a) provides:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person

The crux of its argument is that Tompac is the real party in interest because plaintiff relied upon an alter-ego theory in her EEOC and CHRO filings. However, despite the somewhat inartful drafting of the EEOC and CHRO complaints, plaintiff does not seek to recover against Tompac under an alter-ego theory.[4] In the alter-ego situation, a plaintiff attempts to prove that a company other than the one that formally employed her should actually be treated as her employer for purposes of Title VII. Here, in contrast, plaintiff seeks only to include those employees formally employed by Tompac in the calculation of the number of persons employed by Lightning Fulfillment. Accordingly, Tompac is not a necessary party under Rule 19(a), and the Court does not address defendant's argument that Tompac could not be joined because more than 90 days have elapsed since plaintiff received her right to sue letter.

### B. Title VII retaliation claims

A Title VII claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter. See 42 U.S.C. § 2000e–5(e) and (f); Belgrave v. Pena, 254 F.3d 384, 386 (2d Cir.2001); Shah v. New York State Dep't of Civil Serv., 168 F.3d 610, 613 (2d Cir.1999). The purpose of this exhaustion requirement is to provide notice to the employer and to encour-

age conciliation and voluntary compliance. See Butts v. City of New York Dep't of Hous. Preservation & Dev., 990 F.2d 1397, 1401 (2d Cir.1993); Snell v. Suffolk Cty., 782 F.2d 1094, 1101 (2d Cir.1986).

■ Defendant argues first that plaintiff's retaliation claim must be dismissed because plaintiff did not allege retaliation in her CHRO or EEOC complaints. However, "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related to those that were filed with the agency.'" Shah, 168 F.3d at 614. Conduct alleged in a complaint is "reasonably related" to conduct described in an EEOC charge when it: (1) is within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; (2) would constitute retaliation for filing a timely EEOC charge; or (3) constitutes further incidents of discrimination perpetrated in precisely the same manner as alleged in the EEOC charge. Butts, 990 F.2d at 1402–03.

Unlike the first and third exceptions, the retaliation exception does not rest on the theory that the investigating agency is likely to discover the alleged misconduct during its investigation of plaintiff's allegations, and indeed, "it is equally possible that the retaliation would come after the EEOC investigation was completed." Id. at 1402. Instead, the exhaustion require-

---

claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

4. The Court does not find that permitting plaintiff to go forward with this claim would "make a mockery of [the] required adminis-

trative process," Def. Br. at 11. While the "single employer" and "alter-ego" theories rest upon different conceptions of the relationship between the corporations, the allegation in plaintiff's administrative complaints that an alter-ego relationship existed was sufficient to give notice that plaintiff alleged a close relationship between the two corporations, and sought to aggregate the employees of Tompac with those of Lightning Fulfillment, particularly as plaintiff did not actually name Tompac as a defendant in her administrative complaints.

ment is relaxed where retaliation is alleged because of

> the close connection of the retaliatory act to both the initial discriminatory conduct and the filing of the charge itself. The EEOC already will have had the opportunity to investigate and mediate the claims arising from the underlying discriminatory acts alleged. Due to the very nature of retaliation, the principal benefits of EEOC involvement, mediation of claims and conciliation, are much less likely to result from a second investigation.

*Id.* (citations omitted). In this circuit, "[t]he reasonably related rule has been broadly construed to allow judicial redress for most retaliatory acts arising subsequent to an EEOC filing ...." *Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1209 (2d Cir.1993). Accordingly, the Court finds that plaintiff's retaliation claim, which rests on her allegations that immediately following the filing of the CHRO and EEOC complaints she began to be mistreated by defendant and was pressured to withdraw her complaints, was reasonably related to plaintiff's administrative complaints.

▪ Alternatively, defendant argues that Russo is collaterally estopped from "re-litigating" the issue of retaliatory discharge because the Connecticut Security Appeals Division referee found that plaintiff was ineligible for unemployment compensation benefits because she "voluntarily left suitable work without good cause attributable to the employer, Lightning Fulfillment, Inc." In response, plaintiff contends that the Connecticut Employment Security Appeals Division decision has no preclusive effect on her Title VII retaliation claim.

In *University of Tennessee v. Elliott,* 478 U.S. 788, 796, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), the Supreme Court held that "Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims." In *Elliott,* the plaintiff had filed a federal complaint while state administrative proceedings were pending. The administrative hearing was held during the pendency of the federal lawsuit, in which the administrative judge ruled against the plaintiff. The plaintiff then sought to pursue his federal claims, and the district court held that the administrative findings should be given preclusive effect. The Sixth Circuit reversed, and the Supreme Court affirmed the Sixth Circuit decision. In so holding, the Supreme Court considered the language of Title VII requiring the EEOC to give " 'substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local [employment discrimination] law,' " *id.* at 794, 106 S.Ct. 3220 (*quoting* 42 U.S.C. § 2000e–5(b)), and noted that "it would make little sense for Congress to write such a provision if state agency findings were entitled to preclusive effect in Title VII actions in federal court." *Id.*

Despite this precedent, defendant argues that *Elliott* does not apply because Russo failed to appear at the administrative appellate hearing. However, nothing in *Elliott* suggests that its holding is limited to circumstances where the plaintiff fully exhausted the state administrative proceedings. Further, because under *Elliott,* state agency findings are given no preclusive effect over Title VII claims even where the plaintiff has fully pursued her claims before the agency, it is illogical to conclude that whether plaintiff fully participated in the administrative proceedings makes any difference. *Cf. id.* at 796 n. 5, 106 S.Ct. 3220 ("The fact that respondent requested the administrative hearing rather than being compelled to participate in it does not weigh in favor of preclusion.").

Defendant also relies upon *McCall v. City of Danbury*, No. CV990334554S, 2001 WL 105302 (Conn.Super. Jan. 11, 2001), in support of its position that collateral estoppel or res judicata nonetheless operates to bar plaintiff's retaliation claim. In *McCall*, the plaintiff had previously sought to intervene in a federal lawsuit alleging race discrimination in the city police department, then filed an independent federal suit alleging violations of Title VII that was dismissed on the merits, and then filed a state court suit alleging violations of the Connecticut Fair Employment Practices Act. The superior court found that because Title VII and CFEPA are largely identical, and because plaintiff had a full and fair opportunity to litigate the Title VII claims in his federal lawsuit, "the principles of res judicata and collateral estoppel apply to preclude relitigation in a state court that which has been, or could have been, fully litigated in federal court." *Id.* at *5. Here, of course, plaintiff did not have an opportunity to litigate whether she had good cause to leave her employment in either state or federal court, and under *Elliott*, plaintiff "is entitled to a trial de novo on [her] Title VII claim, since [she] did not seek state court review of the ... administrative proceedings adjudicated against [her]." *DeCintio v. Westchester County Med. Ctr.*, 821 F.2d 111, 114–15 (2d Cir. 1987).

## IV. Conclusion

For the reasons set forth above, defendant's motion for summary judgment [Doc. # 11] is DENIED.

IT IS SO ORDERED.