Jennifer ARCULEO, Plaintiff,

v.

**ON–SITE SALES & MARKETING, LLC, and Sanford Pankin, d/b/a Crystal Hills, Defendants.**

No. 03 CIV. 5991(WCC).

United States District Court, S.D. New York.

June 16, 2004.

Thornton, Bergstein & Ullrich, LLP, (Stephen Bergstein, Esq., Of Counsel), Chester, NY, for Plaintiff.

Anderson Kill & Olick, P.C. (Dona Kahn, Esq., Melissa Golub, Esq., Of Counsel), New York City, for Defendant On–Site Sales & Marketing, LLC.

Kurtzman Matera Gurock Scuderi & Karben, LLP (Howard M. Gurock, Esq., Of Counsel), Spring Valley, NY, for Defendants Sanford Pankin and Crystal Hills.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Jennifer Arculeo brings this action for compensatory and punitive damages against defendants On–Site Sales & Marketing, LLC ("On–Site") and Sanford Pankin d/b/a Crystal Hills, LLC ("Crystal Hills"), alleging numerous violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law §§ 296–97.[1] (Am.Complt.¶¶ 25–26, 28–29.) Defendants argue that neither On–Site nor Crystal Hills may be held liable under Title VII because they are not "employers" as defined by the statute because both businesses have less than the requisite fifteen employees. They move for summary judgment pursuant to Fed. R. Civ. P. 56 dismissing plaintiff's Title VII claims.[2] Defendant Pankin also moves to dismiss plaintiff's Title VII claims against him personally. For the reasons set forth herein, defendants' motion for summary judgment is granted with respect to plaintiff's Title VII claims in their entirety. Plaintiff's

NYHRL claims are dismissed without prejudice.

### BACKGROUND

Unless otherwise noted, the following facts are undisputed. Plaintiff commenced employment as a sales assistant at On–Site, a marketing and sales services firm, in June 2001. (Def. On–Site Rule 56.1 Stmt. ¶ 1; Am. Complt. ¶ 8; Leeds Reply Aff. ¶ 5.) On–Site had a contract with Crystal Hills, a separate single-housing construction and development company, to perform on-site sales and marketing services in connection with a Crystal Hills development under construction in Middletown, New York. (Am. Complt. ¶ 8; De Maio Aff. ¶ 3; Leeds Reply Aff. ¶ 5.) On–Site assigned plaintiff administrative work at Crystal Hills. (Am.Complt.¶ 8.) Thereafter, plaintiff commenced maternity leave in June 2002, and was no longer employed by On–Site as of September 2002. (Def. On–Site Rule 56.1 Stmt. ¶ 2.)

Although plaintiff was employed by On–Site, she worked very closely with Crystal Hills personnel, including defendant Pankin. Pankin shared office space with On–Site at the Crystal Hills development project, and was there every working day, usually from 7:00 a.m. until 2:00 or 3:00 p.m. (Arculeo Decl. ¶ 3.) Pankin was the builder of Crystal Hills and was in charge of construction; he would instruct On–Site supervisors Allan Leeds and Thomas Atkin about sales strategies. (Id. ¶ 4.) Pankin was present at regularly-held meetings on Monday mornings wherein construction

---

**1.** This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(4) and 1367. It is undisputed that plaintiff filed a charge of discrimination against defendants with the Equal Employment Opportunity Commission ("EEOC") in October 2002, and that the EEOC has issued to plaintiff right-to-sue letters with respect to all defendants. (Am. Complt. ¶ 6; Pankin Answer ¶ 6.)

**2.** Should the Court grant defendants' motion for summary judgment, defendants also ask us to decline to exercise our supplemental jurisdiction and to dismiss plaintiff's pendent NYHRL claims pursuant to FED. R. CIV. P. 12(b)(1).

progress and sales were discussed. (*Id.*) Pankin also had a role in On–Site's hiring process and other personnel decisions; plaintiff heard Pankin tell On–Site supervisors that they could not hire a man or an older woman for a vacant position, which led to the hiring of a younger woman named Carol. (*Id.* ¶ 6; De Maio Aff. ¶ 3.) Plaintiff considered Pankin to be her supervisor; she ran errands for him and assisted him with paperwork for matters such as purchase orders and bank loans.[3] (Arculeo Decl. ¶ 5.) Pankin also paid Michelle Morgan, an On–Site employee, to do work for him on her day off from On–Site. (Pl. Rule 56.1 Stmt. ¶ 4.)

In her Complaint, plaintiff alleges a hostile work environment occasioned by numerous incidents of sexual harassment by defendant Pankin such as, *inter alia,* sexually explicit comments and unwanted touching that included being forced to perform and receive unwanted oral sexual acts. (Am.Complt.¶¶ 11–26.) Plaintiff alleges that she complained about the harassment to Allan Leeds, On–Site's manager, and that he changed her schedule in an attempt to keep her away from Pankin. (Pl. Rule 56.1 Stmt. ¶ 4.) Within a week, however, Pankin caused that arrangement to end and plaintiff again had to work with and be harassed by him. (*Id.*) Plaintiff further alleges that when she called Leeds about returning from maternity leave, he informed her that he had no position for her at Crystal Hills because she could not work with Pankin, and that

he did not offer her an alternative placement. (*Id.*)

Defendants On–Site and Crystal Hills have submitted payroll tax forms reflecting the number of employees each had on the payroll during the times relevant to this case. During 2000, defendant On–Site had at most six employees on the payroll. (Def. On–Site Rule 56.1 Stmt. ¶ 5; Leeds Aff., Exs. A–D.) During 2001, it had at most eleven employees, (Def. On–Site Rule 56.1 Stmt. ¶ 6; Leeds Aff., Exs. E–H) and had at most fourteen employees in 2002. (Def. On–Site Rule 56.1 Stmt. ¶ 7; Leeds Aff., Exs. I–L.) Crystal Hills had at most eight on the payroll in 2001, and at most seven in 2002. (Pankin Aff., Ex. C.) Crystal Hills did not submit payroll figures for 2000, and did not pay any employees in 2003.[4] (Pankin Aff. ¶ 5.)

## DISCUSSION

### I. *Standard of Review*

■ Under FED. R. CIV. P. 56, summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The burden rests on the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in his favor. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. In deciding wheth-

---

3. Whether Pankin was plaintiff's supervisor and the degree of control that he had over On–Site's operations is disputed by On–Site and presents an issue of fact that we resolve in plaintiff's favor for purposes of this summary judgment motion. (Leeds Reply Aff. ¶¶ 8–14.) *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

4. Pankin and Crystal Hills did not compensate plaintiff for her activities while she was employed for On–Site, and never issued her a W–2 or 1099 form. (Def. Pankin Rule 56.1 Stmt. ¶¶ 5–8.) Conversely, Pankin was not an On–Site employee, and he did not ever receive a W–2 or 1099 form from On–Site. (*Id.* ¶¶ 9–10.)

er summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See id.* at 255, 106 S.Ct. 2505. To defeat summary judgment, the non-movant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Services, L.P.*, 22 F.3d 1219, 1224 (2d Cir.1994).

## II. Whether Defendants Are "Employers" Subject to Title VII

Defendants contend that they are entitled to summary judgment dismissing plaintiff's Title VII claims because at all relevant times, each of them had less than fifteen employees and was therefore not an "employer" subject to liability under that statute. (Def. Pankin Mem. Supp. Summ. J. at 4–5; Def. On–Site Mem. Supp. Summ. J. at 3–4.) Plaintiff argues in response that defendants meet the fifteen-employee threshold because they functioned as her "joint employers" and combined to employ fifteen or more persons at all relevant times. (Pl. Mem. Opp. Summ. J. at 7–8.) It is undisputed that aggregation of defendants' employees would meet the fifteen-employee threshold.

"Employer" is a defined term under Title VII, which provides in relevant part that "[t]he term 'employer' means a person engaged in an industry affecting commerce who has *fifteen or more employ-*ees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year,* and any agent of such a person . . . ." 42 U.S.C. § 2000e(b) (emphasis added); *see also Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 212, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997) (holding that "the ultimate touchstone under § 2000e(b) is whether an employer has employment relationships with 15 or more individuals for each working day in 20 or more weeks during the year in question"). With respect to calculating the actual number of employees, "all one needs to know about a given employee for a given year is whether the employee started or ended employment during that year and, if so, when. He is counted as an employee for each working day after arrival and before departure." *Id.* at 211, 117 S.Ct. 660. In the Second Circuit, proof that an employer-defendant has fifteen or more employees is an essential element of the merits of a plaintiff's Title VII case, and not a jurisdictional issue; accordingly, we have subject matter jurisdiction over the Title VII claims so long as the plaintiff asserts a "non-frivolous claim that the defendant is a covered employer."[5] *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 366 (2d Cir.2000).

We begin by noting that the United States Court of Appeals for the Second Circuit has not yet passed on the question of whether and in what circumstances a plaintiff may satisfy Title VII's fifteen-employee threshold via the aggregation of the employment rolls of separate defendants. The parties' memoranda and the Court's independent research have revealed, however, two related, but distinct lines of cases from courts within and outside the Second Circuit addressing this

---

5. Defendants do not contend pursuant to FED. R. CIV. P. 12(b)(1) that we lack subject matter jurisdiction under *Da Silva,* apparently because the Complaint alleges that each defendant had the requisite fifteen or more employ-ees and the joint employer theory provides a non-frivolous basis for those assertions. (Am. Complt. ¶¶ 3–4.) Rather, they seek summary judgment pursuant to Rule 56 on the merits of plaintiff's Title VII claim.

issue through the application of two similar, but analytically distinct principles: the single employer doctrine and the joint employer doctrine. The joint employer doctrine is applicable when the separate businesses at issue have become associated with one another via a contractual relationship. *See, e.g., Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1360–61 (11th Cir.1994) (concluding that the defendants, a hotel and the property management agency with whom it contracted, were the plaintiff's joint employers). In light of the business relationship between defendants in the present case, the parties have framed the issue as whether the employees of joint employers may be aggregated to meet the fifteen-employee threshold.[6] (Pl. Mem. Opp. Summ. J. at 7–8; Def. On–Site Reply Mem. Supp. Summ. J. at 5–6; Def. Pankin Reply Mem. Supp. Summ. J. at 2–4.)

The joint employer doctrine "assumes ... separate legal entities ... [that have] ... chosen to handle certain aspects of their employer-employee relationships jointly." *Clinton's Ditch Coop.*, 778 F.2d at 137. The joint employer doctrine is, however, analytically similar to the single employer doctrine, *see supra* note 6, as "[a] joint employer relationship may be found where there is sufficient evidence that a defendant had immediate control over another company's employees. Relevant factors include the commonality of hiring, firing, discipline, pay, insurance records, and supervision." *Rivera v. Puerto Rican Home Attendants Servs., Inc.*, 922 F.Supp. 943, 949 (S.D.N.Y.1996) (discussing the contractual relationship between New York City and a home health care agency).

■ Plaintiff acknowledges that courts in the Southern District of New York, including Judge Scheindlin in *Serrano v. 900 5th Ave. Corp.*, 4 F.Supp.2d 315 (S.D.N.Y.1998), and this Court in *Prunella v. Carlshire Tenants, Inc.*, 94 F.Supp.2d 512 (S.D.N.Y.2000) (Conner, J.), have declined to permit the aggregation of employees in the joint employer context.[7]

---

**6.** In contrast, the single employer doctrine is utilized to prove that two "nominally separate" corporations or business entities are actually divisions of a single business enterprise, such as in the parent-subsidiary context. *Clinton's Ditch Coop. Co. v. NLRB*, 778 F.2d 132, 137 (2d Cir.1985), *cert. denied*, 479 U.S. 814, 107 S.Ct. 67, 93 L.Ed.2d 25 (1986); *see also Russo v. Lightning Fulfillment, Inc.*, 196 F.Supp.2d 203, 206–07 (D.Conn.2002) (applying single employer doctrine when the alleged sexual harasser and his family owned two separate businesses); *Darden v. Daimler-Chrysler N. Am. Holding Corp.*, 191 F.Supp.2d 382, 395–96 (S.D.N.Y.2002) (applying single employer doctrine when the plaintiff argued that he was an employee of the defendant's parent company). "Factors to consider in determining whether two companies are so related as to be considered a 'single employer' include: 'interrelation of operations, common management, centralized control of labor relations and common ownership.' " *Russo*, 196 F.Supp.2d at 207 (quoting *Radio & Television Broad. Technicians Local Union 1264 v.*

*Broadcast Service of Mobile, Inc.*, 380 U.S. 255, 256, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965) (per curiam)). "Centralized control over labor relations, the most important prong in the single-employer inquiry, can include such factors as whether the companies have separate human-resources departments and whether the entity 'establishes its own policies and makes its own decisions as to the hiring, discipline, and termination of its employees.' " *Laurin v. Pokoik*, No. 02 Civ.1938, 2004 WL 513999, at *6 (S.D.N.Y. Mar. 15, 2004) (citation omitted).

**7.** We commend plaintiff's counsel for bringing to our attention in a responsible manner the controlling adverse authority of *Serrano* and *Prunella. See, e.g., In re Moore*, 307 B.R. 394, 398 (Bkrtcy.S.D.N.Y.2004) (discussing N.Y. CODE OF PROF'L RESPONSIBILITY, EC 7–23, which provides that "[w]here a lawyer knows of controlling legal authority directly adverse to the position of the client, the lawyer should inform the tribunal of its existence unless the adversary has done so; but, having made

(Pl. Mem. Opp. Summ. J. at 7–8.) Citing cases from numerous district and appeals courts outside the Second Circuit, and noting the lack of a Second Circuit ruling on the issue, she argues that we should revisit that conclusion as contrary to the remedial purpose of Title VII. (*Id.* at 3–4, 7–8.) Defendants argue otherwise. Given the lack of definitive guidance from the Second Circuit on this question, and the maxim that the decisions of district courts, even those located within the same district, are not binding on other district courts, *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 377 (S.D.N.Y.2000), we accept plaintiff's invitation to revisit this issue, although we will accord "great weight" to our own prior decision in *Prunella. McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir.2004).[8]

We begin with a review of the Southern District decisions on the joint employer aggregation issue. In *Serrano*, the plaintiff, a worker at a residential property, brought a Title VII action for employment discrimination against the building and the property management company who had arranged for the plaintiff's employment there. 4 F.Supp.2d at 316. Judge Scheindlin determined that both the management company and the building had supervisory authority over the plaintiff, and concluded that the management company could be held liable under Title VII as the plaintiff's joint employer. *Id.* at 317. The building then argued for dis-

missal on the ground that it had less than fifteen employees and was not subject to Title VII. *Id.* at 318. Judge Scheindlin noted that this was a case of first impression in the Second Circuit, but rejected the plaintiff's argument that the building's employment roll should be aggregated with that of the property management company because they were joint employers, and dismissed the complaint against the building. *Id.* In so holding, she discussed the fifteen-employee rule's legislative purpose of mitigating litigation costs and the burdens of Title VII compliance on small businesses, and distinguished aggregation for "single employers" because "joint employers are not part of a unitary, integrated enterprise, but retain separate identities." *Id.* (citing *Clinton's Ditch Coop.*, 778 F.2d at 137). Judge Scheindlin also relied on out-of-Circuit decisions, including *Burdi v. Uniglobe Cihak Travel, Inc.*, 932 F.Supp. 1044, 1047 (N.D.Ill.1996), and adopted what she perceived as the majority view, which is "that the question of whether two entities are joint employers is to be decided after it is determined that both meet the fifteen-employee minimum." *Serrano*, 4 F.Supp.2d at 318. She ultimately concluded that "[e]xpanding the Title VII liability of small businesses therefore cannot be justified on the ground that the costs imposed could be spread over a single jurisdictionally-sufficient enterprise" and

---

such disclosure, the lawyer may challenge its soundness in whole or in part."); *see also* N.Y. CODE OF PROF'L RESPONSIBILITY DR 7-106.

**8.** We note that many of the cases discussed herein treat the fifteen-employee minimum as a prerequisite to the court's subject matter jurisdiction rather than merely going to the merits of the plaintiff's case, including the Southern District decisions in *Prunella* and *Serrano* that were decided prior to the Second Circuit's ruling in *Da Silva*. Indeed, a circuit split exists on this issue. *See Cousin v. Sofono, Inc.*, 238 F.Supp.2d 357, 361 (D.Mass.

2003) (collecting Title VII cases and adopting Second Circuit's *Da Silva* merits-based approach in a FMLA case). Inasmuch as a court may dismiss a case for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1) at any time, and may consider factual evidence beyond the pleadings in doing so, *see, e.g., Kruman v. Christie's Int'l, PLC*, 284 F.3d 384, 390 (2d Cir.2002), *cert. dismissed*, —— U.S. ——, 124 S.Ct. 27, 156 L.Ed.2d 690 (2003), those aggregation cases decided in the subject matter jurisdiction context remain instructive herein.

that the potential exposure could "discourage the informal employment arrangements upon which small businesses often depend, and thus impose significant costs on both them and their employees." *Id.*

Several years later, this Court decided *Prunella,* a Title VII religious discrimination case brought by a cooperative's superintendent against the cooperative building and its property manager. 94 F.Supp.2d at 513. We followed the reasoning in *Serrano* precisely, and concluded, in a case decided before the Second Circuit's definitive ruling in *Da Silva,* that we lacked subject matter jurisdiction over the cooperative because "an entity with less than fifteen employees may not be held responsible under Title VII with a larger entity as a joint employer." *Id.* at 514–15. Moreover, this Court's decision in *Prunella* was not the last word in the Southern District on joint employer aggregation. In a recent decision, Judge McKenna cited *Serrano* and concluded that "[b]ecause the joint employer doctrine is not used to aggregate entities, but considers each as a separate legal entity, the number of employees cannot be added in this analysis." *Laurin,* 2004 WL 513999, at *8; *see also id.* at *4 ("Because application of the [single employer] doctrine results in the treatment of two ostensibly separate entities as a single integrated enterprise, the number of employees of each entity can be aggregated ...."); *Astrowsky v. First Portland Mortgage Corp.,* 887 F.Supp. 332, 335–36 (D.Me.1995) (stating that the court did not have subject matter jurisdiction under Title VII to consider joint employer argument because neither defendant had fifteen employees).

Other circuit and district courts have arrived at conclusions on this issue contrary to that of the Southern District courts, and allow the aggregation of the employees of joint employers as an action that furthers the remedial purpose of Title VII. In *Virgo,* a 1994 case from the Eleventh Circuit not addressed in the Southern District's seminal *Serrano* opinion, the plaintiff, a hotel manager, brought a Title VII sexual harassment action against both the partnership that owned the hotel where she worked and the property management group with whom the partnership contracted to run the hotel. 30 F.3d at 1353–54. The plaintiff had been sexually harassed by the president of the defendant management company, who was also primarily in charge of managing the hotel's operations. *Id.* at 1354. On appeal, the hotel partnership argued that the district court improperly held it liable under Title VII as a joint employer and also improperly found that the defendants employed more than fifteen employees. *Id.* at 1359.

The Eleventh Circuit rejected these arguments, and construed the term "employer" liberally because of Title VII's remedial purpose. *Id.* It held that the hotel partnership and the property management group could be held liable as joint employers because the partnership retained "significant authority to control matters at the hotel" under the contract. *Id.* at 1360. The contract provided that hotel employees would be employed and compensated by the partnership, but that the property management group was responsible for all day-to-day decisions and supervision, including salary determination. *Id.* at 1360–61. Continuing with its broad construction of the term "employer," the Eleventh Circuit then held that the Title VII fifteen-employee requirement was satisfied because the defendants were joint employers, and together employed more than fifteen people. *Id.* at 1361.

The Eleventh Circuit does not stand alone in its conclusion that aggregation of the employees of joint employers to reach the fifteen-employee minimum is permissi-

ble under Title VII. *See March v. Tech. Employment Services, Inc.*, No. Civ. 98–636–M, 2000 WL 1480371, at \*5 (D.N.H. Mar.3, 2000) (concluding that the court had subject matter jurisdiction over the plaintiff's Title VII claims because although it had only four permanent employees, the defendant-temporary worker placement service retained sufficient control over placed workers to be considered a joint employer with its clients who were actually responsible for the plaintiff's employment conditions); *Triche v. Crescent Turnkey & Eng'g*, No. Civ. A. 97–2657, 1998 WL 139986, at \*1 n. 3, \*3–4 (E.D.La. Mar. 25, 1998) (liberally construing Title VII as allowing aggregation under either the joint or single employer standard to meet the fifteen-employee minimum, but applying the single employer standard as more favorable to plaintiff); *Burdett v. Abrasive Eng'g & Tech., Inc.*, 989 F.Supp. 1107, 1111–12 (D.Kan.1997) (following *Virgo* and applying the joint-employer test to conclude that 300 employees of a temporary employment agency utilized by the defendant should not be aggregated because only six of those temporary employees worked for the defendant and they did not work enough to satisfy the "each working day in each of 20 or more calendar weeks" requirement of § 2000e(b)); *Zarnoski v. Hearst Bus. Communications, Inc.*, No. Civ. A. 95–3854, 1996 WL 11301, at \*2–3, \*7–9 (E.D.Pa. Jan. 11, 1996) (concluding that employees of the defendants, a publisher and its sales representative, could be aggregated upon satisfaction of either joint or single employer standard, but that the plaintiff had satisfied neither because the publisher did not have a role in employment decisions and was not "primarily responsible" for the day-to-day supervision of the plaintiff as it did not even have an office in the same state where she worked).

■ Having reviewed the out-of-Circuit decisions holding to the contrary, we are loath to depart from the line of Southern District cases concluding that the employees of joint employers may not be aggregated to reach the fifteen-employee minimum. Although these local decisions are not binding on us, *see, e.g., In re Oxford Health Plans*, 191 F.R.D. at 377, we nevertheless find them persuasive. They, and in particular Judge Scheindlin's opinion in *Serrano*, account for the legislative purpose and history of Title VII's fifteen-employee minimum, a factor that is not addressed by the other decisions that emphasize only the liberal construction to be given to Title VII as a whole. Indeed, the Second Circuit has discussed in detail the purpose of the fifteen-employee minimum:

> First, the floor debate over § 2000e(b) indicates that the costs associated with defending against discrimination claims was a factor in the decision to implement a minimum employee requirement. In discussions over a proposed change to the minimum employee threshold, the burdens placed upon a small business forced to comply with federal regulations and defend against a Title VII suit were explicitly addressed.... As the dissent correctly notes, other factors were also considered by Congress in enacting § 2000e(b), including the protection of intimate and personal relations existing in small businesses, potential effects on competition and the economy, and the constitutionality of Title VII under the Commerce Clause.

*Tomka v. Seiler Corp.*, 66 F.3d 1295, 1314 (2d Cir.1995) (citations omitted) (discussing the legislative history of 42 U.S.C. § 2000e(b) in holding that an employer's agents may not be held individually liable under Title VII). Accordingly, we conclude that the prior Southern District decisions on this issue state the correct rule, and that employees of joint employers may

not be aggregated to meet the fifteen-employee minimum of Title VII.

    ■ Thus, in light of this holding, we need not undertake any extensive analysis of the relationship between On–Site and Crystal Hills to determine whether they are in fact plaintiff's joint employers. Indeed, it does not appear and plaintiff does not argue that On–Site and Crystal Hills constitute a single employer whose employees may be aggregated to meet the fifteen-employee minimum of Title VII. *See, e.g., Laurin,* 2004 WL 513999, at *4, 8; *see also supra* note 6. Thus, having concluded that employees of joint employers may not be aggregated to meet the fifteen-employee minimum of Title VII, it is clear that plaintiff's relief in this case is to be had in state court under the NYHRL, which has a four-person minimum instead.[9] *See* N.Y. Exec. Law § 292(5) ("The term 'employer' does not include any employer with fewer than four persons in his employ."); *DeStefano v. Kopelman,* 265 A.D.2d 446, 446–47, 697 N.Y.S.2d 111 (2d Dep't 1999) (concluding that the plaintiff's NYHRL sexual harassment claim failed to state a cause of action when "[a]t no time during the period in which the alleged harassing behavior occurred did the defendant employ four or more persons."). We, therefore, grant defendants' motion for summary judgment dismissing plaintiff's Title VII claims,[10] and we dismiss plaintiff's NYHRL claims without prejudice.

## CONCLUSION

    For all of the foregoing reasons, defendants' motion for summary judgment is granted with respect to plaintiff's Title VII claims in their entirety. Plaintiff's New York Human Rights Law claims are dismissed without prejudice. Judgment to be entered by the Clerk of the Court.

    SO ORDERED.

---

9. Given the nascent stage of this litigation, we decline to exercise our supplemental jurisdiction over plaintiff's state law claims. They are, therefore, dismissed without prejudice. *See, e.g.,* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction ...."); *Tops Markets, Inc. v. Quality Markets, Inc.,* 142 F.3d 90, 103 (2d Cir.1998) (stating that "when all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice.").

10. To the extent that the Complaint alleges any Title VII claims against defendant Pankin individually in a supervisory capacity, they too are dismissed pursuant to Rule 56 because it is well settled that "under Title VII, individual supervisors are not subject to liability." *Mandell v. County of Suffolk,* 316 F.3d 368, 377 (2d Cir.2003); *see also Tomka,* 66 F.3d at 1313, 1317.