**Leonel SERRANO, Plaintiff,**

v.

**900 5TH AVENUE CORP. and Brown Harris Stevens Residential Management, LLC, Defendants.**

**No. 97 Civ. 5829(SAS).**

United States District Court,
S.D. New York.

May 11, 1998.

Sara C. Kay, BLS Legal Services Corp., Federal Litigation Program, Brooklyn, NY, for Plaintiff Leonel Serrano.

Neal Schwarzfeld, Schwarzfeld, Ganfer & Shore, L.L.P., New York City, for Defendant Brown Harris Stevens Residential Management.

Colleen Martin, Hoey, King, Perez, Toker and Epstein, New York City, for Defendant 900 5th Avenue Corp.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Defendants Brown Harris Stevens Residential Management ("BHS") and 900 5th Avenue Corp. ("900 5th") move to dismiss this employment discrimination case for lack of subject matter jurisdiction.[1] BHS claims that because it is not Plaintiff's employer, it is an improper defendant and should be dismissed. Similarly, 900 5th argues that because it has less than 15 employees, Plaintiff cannot bring this action against it.[2] For the following reasons, the Complaint is dismissed as to 900 5th, but not as to BHS.

## I. Standard for Evaluating Rule 12(b)(1) Motions

■ In considering a motion to dismiss for want of subject matter jurisdiction, the Court must accept as true all material factual allegations in the Complaint and refrain from drawing inferences in favor of the party contesting jurisdiction. *See Atlantic Mut. Ins.*

*Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir.1992). A court is not confined to the Complaint, however: "On a motion under [Rule] 12(b)(1) challenging the district court's subject matter jurisdiction, the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." *Antares Aircraft v. Federal Republic of Nigeria*, 948 F.2d 90, 96 (2d Cir.1991), *vacated on other grounds*, 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992). Thus the standard used to evaluate a Rule 12(b)(1) claim is akin to that for summary judgment under Fed. R.Civ.P. 56(e)[3] ("Rule 56(e)"). *See Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir.1986).[4]

## II. Discussion

### A. Is BHS Plaintiff's Employer?

■ In order to permit a court to exercise jurisdiction over a defendant in a Title VII case, the defendant must meet the statutory definition of an "employer." *See Astarita v. Urgo Butts & Co.*, 96 Civ. 6991, 1997 WL 317028 (S.D.N.Y. June 10, 1997); *see also EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248–49, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991) (describing the term "employer" as used in Title VII as "jurisdictional"). The Title VII definition of "employer" is "suffi-

---

1. Fed.R.Civ.P. 12(b) states that:
 every defense, in law or fact, to a claim for relief in any pleadings, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may be made by motion: (1) lack of jurisdiction over the subject matter ....

2. Title VII of the Civil Rights Act of 1964 applies to any employer who "has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 78 Stat. 253, as amended, 42 U.S.C. § 2000e(b).

3. Rule 56(e) provides in pertinent part:
 Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.... The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion [] is made and supported as

provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.
 Rule 56(e) requires that the non-movant oppose the summary judgment motion with any of the evidentiary materials—affidavit, depositions, answers to interrogatories and admissions—listed in Rule 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

4. [W]hen, as here, subject matter jurisdiction is challenged under Rule 12(b)(1), evidentiary matter may be presented by affidavit or otherwise. While a 12(b)(1) motion cannot be converted into a Rule 56 motion, Rule 56 is relevant to the jurisdictional challenge in that the body of decisions under Rule 56 offers guidelines in considering evidence submitted outside the pleadings.
 *Kamen*, 791 F.2d at 1010–11 (citations omitted).

ciently broad to encompass any party who significantly affects access of any individual to employment opportunities, regardless of whether the party may technically be described as an 'employer' . . . at common law." *Spirt v. Teachers Ins. & Annuity Ass'n*, 691 F.2d 1054, 1063 (2d Cir.1982), *vacated on other grounds*, 463 U.S. 1223, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983). *See also Rivera v. Puerto Rican Home Attendants Servs. Inc.*, 922 F.Supp. 943 (S.D.N.Y.1996) (collecting and describing the "numerous formulations" used in the Second Circuit to determine the applicability of the Title VII definition of "employer").[5]

■ BHS meets this standard. By contract, it has the authority to control who is hired and fired at 900 5th, and how the employees are supervised. *See* Declaration of Robert Hoff ("Hoff Dec.") Ex. A at ¶ 2(a).[6] Moreover, it has frequently used this authority with regard to 900 5th employees. For example, BHS employee Paul Ciaramella sent disciplinary letters to 900 5th employees who engaged in improper behavior. *See* Deposition of Paul Ciaramella, BHS Property Manager for 900 5th ("Ciaramella Dep.") at 28. John Hughes, Ciaramella's predecessor as Property Manager for 900 5th, sent termination letters to certain 900 5th employees.

BHS exercised its authority with regard to hiring as well as firing and discipline. Applications for employment at 900 5th could be obtained at BHS's office. *See* Ciaramella Dep. at 122–123. These applications, including the one filled out by plaintiff, bore BHS's name. *See* Hoff. Dec., Ex. B. When 900 5th's long-time building superintendent died, BHS placed an advertisement for a replacement Super at 900 5th in the New York Times. *See* Hoff Dec. Ex. L. Ciaramella screened the applicants for the job. *See* Ciaramella Dep. at 106–108. *See* Hoff Dec., Ex. E. Ciaramella also handled the situation when one 900 5th employee on leave sought reinstatement. *See* Hoff Dec., Ex. F.

BHS also participated in labor/management relations at 900 5th. A BHS employee attends all union arbitrations for 900 5th employees. *See* Ciaramella Dep. at 69. When it is not possible for a BHS employee to attend, BHS moves to postpone the hearing. *See id.* at 70. When one employee had an arbitration hearing before the Office of Contract Arbitrators of Local 32B–32J, the union which represents 900 5th's employees, BHS was a party. *See* Hoff Dec., Ex. F at 8–12.

BHS's relationship to those employed at 900 5th demonstrates other indicia of employer status as well. It purchased employee uniforms and arranged for the uniform vendor to measure the employees. *See* Deposition of Robert Pincus, BHS Account Executive, at 63. Furthermore, BHS's logo appeared on the paychecks employees—including plaintiff—received. *See* Hoff. Dec., Ex. J.

In light of this evidence, it is apparent that BHS "significantly affect[ed] the employment opportunities" of those employed at 900 5th. *Spirt*, 691 F.2d at 1063. BHS seizes upon the fact that due to plaintiff's short tenure at 900 5th, its direct contact with him was limited.[7] If I were to draw from this the conclu-

---

5. Holding those responsible who control the aspects of employment accorded protection under Title VII is "consistent with the congressional intent both that the Act's effectiveness not be frustrated by an employee's delegating authority . . . and that the Act be interpreted liberally in order to achieve its remedial purpose of eradicating discrimination in employment." *EEOC v. Sage Realty Corp., Inc.*, 87 F.R.D. 365, 370 (S.D.N.Y.1980) (citations omitted). Further, this Court has recognized that:

[t]o permit a covered employer to exploit circumstances peculiarly affording it the capability of discriminatorily interfering with an individual's employment opportunities with another employer, while it could not do so with respect to employment in its own service, would be to condone continued use of the very criteria for employment that Congress has prohibited.
*Matthews v. New York Life Ins. Co.*, 780 F.Supp. 1019, 1023 (S.D.N.Y.1992) (quoting *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338, 1341 (D.C.Cir.1973)).

6. Robert Hoff is a law student at the Brooklyn Law School Federal Litigation Clinic. He is supervised by Sara C. Kay, an attorney working with the clinic.

7. BHS's name appeared on plaintiff's paychecks and on the employment application he filled out; however, plaintiff does not contend that he was hired, terminated, disciplined or supervised by any BHS employee.

sion BHS recommends, however, an anomalous result would be reached. BHS would not be *plaintiff's* employer for Title VII purposes; however, it would be the employer of an identically situated worker at 900 5th who happened to have had some further contact with a BHS supervisor. Congress surely did not intend such an illogical outcome. Furthermore, BHS's contractual authority to supervise workers at 900 5th is likely to have affected the conditions of plaintiff's employment in a non-trivial way: The presence of discretionary supervisory authority can have a significant effect on an employee's behavior, even when that authority is not actually exercised. To allow BHS to avoid Title VII liability on this ground would be inconsistent with the purposes of Title VII.

### B. Is 900 5th an Employer Within the Meaning of Title VII?

Defendant 900 5th argues it cannot be considered plaintiff's "employer" under Title VII because it employs fewer than the statutory minimum of fifteen people. *See* 42 U.S.C. § 2000e(b) ("The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees ....."). Because 900 5th and BHS both had supervisory authority over plaintiff's employment, however, one could argue that their employees should be counted together under a "joint employer" theory, and thus that the fifteen-employee minimum is met for both.

 Analysis of this issue—which appears to be one of first impression in this Circuit—requires consideration of the purposes of the fifteen-employee rule, which include mitigation of "the burdens of compliance and potential litigation costs" associated with Title VII. *Morelli v. Cedel*, 141 F.3d 39, 44–45 (2d Cir.1998). This purpose would be poorly served by a rule which subjected small businesses to Title VII liability whenever they can be considered "joint employers" with larger entities. First, unlike entities in a "single employer" situation, joint employers are not part of a unitary, integrated enterprise, but retain separate legal identities. *See Clinton's Ditch Cooperative Co. v.*

*N.L.R.B.*, 778 F.2d 132, 137 (2d Cir.1985) (outlining differences between "single employer" and "joint employer" analysis). Expanding the Title VII liability of small businesses therefore cannot be justified on the ground that the costs imposed could be spread over a single, jurisdictionally-sufficient enterprise. Second, small businesses would face considerable uncertainty if any shared managerial authority could leave them subject to Title VII, especially given the broad, fact-intensive definition of "employer" described above. Such uncertainty could discourage the informal employment arrangements upon which small businesses often depend, and thus impose significant costs on both them and their employees. Perhaps for these reasons, most courts that have considered the issue have held that the question of whether two entities are joint employers is to be decided *after* it is determined that both meet the fifteen employee minimum. *See Burdi v. Uniglobe Cihak Travel Inc.*, 932 F.Supp. 1044, 1047 (N.D.Ill. 1996) (no Title VII subject matter jurisdiction existed where both of plaintiff's joint employers had fewer than fifteen employees); *see also Magnuson v. Peak Technical Servs. Inc.*, 808 F.Supp. 500, 507 (E.D.Va.1992) ("In order to be subject to liability under Title VII, a defendant must (1) fall within Title VII's statutory definition of 'employer,' and (2) have exercised substantial control over significant aspects of ... plaintiff's employment."). *But see Matthews*, 780 F.Supp. at 1023 (without analysis, court declines to grant summary judgment in favor of defendant who employed fewer than fifteen people). Because 900 5th's employees cannot be counted with BHS's, it falls outside Title VII's definition of "employer."

### III. Conclusion

Because BHS is potentially liable as plaintiff's employer, its Rule 12(b)(1) motion to dismiss is denied. Because it does not meet the required minimum of fifteen employees, 900 5th's motion is granted. A conference is scheduled for May 19 at 4:30.

SO ORDERED: