**Jennifer ARCULEO, Plaintiff–Appellant,**

v.

**ON–SITE SALES & MARKETING, LLC and Sanford Pankin, also known as Crystal Hills, Defendant–Appellees.**

**Docket No. 04–3807 CV.**

United States Court of Appeals, Second Circuit.

Argued: April 13, 2005.

Decided: Sept. 30, 2005.

Stephen Bergstein, Thornton, Bergstein & Ullrich, Chester, NY, for Plaintiff–Appellant.

Dona S. Kahn, Anderson Kill & Olick, New York, NY, for Defendant–Appellee On–Site Sales & Marketing, LLC.

Howard M. Gurock, Kurtzman, Matera, Gurock, Scuderi & Karben, LLP, Spring Valley, NY, for Defendant–Appellees Sanford Pankin, a/k/a Crystal Hills.

Before: WALKER, Chief Judge, LEVAL, Circuit Judge, and LYNCH, District Judge.[*]

LEVAL, Circuit Judge.

Plaintiff Jennifer Arculeo ("Arculeo"), who brought this suit alleging prohibited sex-based discrimination in employment, appeals from a judgment of the United States District Court for the Southern District of New York, William C. Conner, *Judge*, granting summary judgment to the defendants on the claims under Title VII of the Civil Rights Act of 1964, and dis-

---

[*] The Honorable Gerard E. Lynch, United States District Judge for the Southern District of New York, sitting by designation.

missing without prejudice the claims under the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law §§ 296–297.

An employer is not covered by the provisions of Title VII, unless the employer has at least fifteen employees. *See* 42 U.S.C. § 2000e(b). Defendants On–Site Sales & Marketing, LLC ("On–Site") and Crystal Hills, LLC ("Crystal Hills") each moved for summary judgment in part on the ground that it did not have fifteen employees and therefore was not subject to liability under Title VII.[1] Arculeo did not dispute that each of them, if considered as an independent entity, had fewer than fifteen employees during the relevant time period, but argued that they should be deemed to have employed her jointly and that their employees should therefore be aggregated to meet the fifteen-employee threshold. The district court concluded that, as a matter of law, employees of joint employers may not be aggregated to meet the fifteen-employee minimum. The court therefore granted summary judgment without reaching the question whether the defendants were, in fact, joint employers.

We affirm, on somewhat different grounds. Without ruling on the question whether employees of joint employers may be aggregated to meet the fifteen-employee minimum of Title VII, we conclude that the plaintiff has not shown circumstances that could justify an aggregation of a sufficient number of employees to satisfy the statutory minimum.

## Background

In June 2001, plaintiff Arculeo began working as a sales assistant for On–Site, a marketing and sales services firm. Her employment at On–Site continued to September 2002. During this period, On–Site never had more than fourteen employees.

On–Site contracted to perform on-site sales and marketing services for Crystal Hills, a housing construction company, in connection with a Crystal Hills development in Middletown, New York. On–Site assigned plaintiff to work with and under the supervision of Crystal Hills personnel at the Middletown office of Crystal Hills. Throughout the course of her employment at On–Site, plaintiff worked at the Crystal Hills office. During this time, Crystal Hills never had more than eight employees.

Most or all of the alleged abusive conduct was on the part of defendant Sanford Pankin, who had a supervisory role at Crystal Hills,[2] and Allan Leeds, an On–

---

1. As discussed below, *see infra* note 10, it is unclear whether Arculeo properly sued the corporate entity Crystal Hills, and whether Crystal Hills was ever a defendant in this case. However, because motions from Pankin's lawyers before the district court claimed to represent the "defendants" Pankin and Crystal Hills, we characterize certain arguments as being made by Crystal Hills without expressing any view as to whether Crystal Hills is a party to this suit. Because, as discussed below, we determine that Title VII claims brought against Crystal Hills, to the extent that they have been properly brought, must be dismissed, we need not reach this question.

2. Pankin's precise role at Crystal Hills is not clear. He was named in the First Amended Complaint as a defendant, "d/b/a Crystal Hills." Evidence submitted on behalf of the defendant and uncontested by plaintiff showed, however, that Crystal Hills was a limited liability corporation, rather than a doing-business name of Pankin. The evidence showed that Pankin exercised supervisory authority for Crystal Hills. The district court dismissed the suit insofar as it asserted a Title VII claim against Pankin in the role of a supervisor at Crystal Hills because Title VII, while imposing liability on employers, does not impose liability on the supervisory personnel of employers. *See Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir.2003) (declaring that a suit against a supervisor in

Site supervisor. The allegations of the complaint with respect to Pankin are that he repeatedly forced plaintiff to engage in oral sex with him, that he frequently made lewd comments directed at her, both when they were alone together and in the presence of co-workers, and that when she became pregnant, he told her to get an abortion. With respect to Leeds, the complaint alleges that, when Pankin told plaintiff to get an abortion, Leeds volunteered that her medical insurance provided by On–Site would cover the abortion; that when plaintiff complained to Leeds about Pankin's harassment, Leeds, after temporarily reassigning plaintiff so that she would not have to work with Pankin, yielded to Pankin's demand that she be returned to work with him; and finally that after her maternity leave, when she refused to resume work with Pankin, Leeds fired her, saying that if she would not work with Pankin at Crystal Hills, she did not have a job at On–Site.

In support of their motions for summary judgment, the defendants showed (and plaintiff does not dispute) that during the period in question, neither On–Site nor Crystal Hills ever had as many as fifteen employees on its payroll. In response, plaintiff sought to satisfy the fifteen-employee requirement by contending that Crystal Hills supervised On–Site employees, that On–Site and Crystal Hills should therefore be deemed joint employers, and that their employees should be aggregated to determine whether the fifteen-employee requirement was met.

The district court did not reach a conclusion as to whether On–Site and Crystal Hills were in fact joint employers. It deemed such an inquiry unnecessary because it concluded that the employees of joint employers could not be aggregated to satisfy the fifteen-employee requirement.[3] *Id.* at 612. The district court began its analysis of the aggregation question by reviewing three opinions of the district court for the Southern District of New York, all of which concluded that the employees of joint employers may not be aggregated for purposes of satisfying the fifteen-employee minimum-*Serrano v. 900 5th Ave. Corp.*, 4 F.Supp.2d 315 (S.D.N.Y. 1998), *Prunella v. Carlshire Tenants, Inc.*, 94 F.Supp.2d 512 (S.D.N.Y.2000) (also decided by Judge Conner), and *Laurin v. Pokoik*, 2004 U.S. Dist. LEXIS 4066, 2004 WL 513999 (S.D.N.Y. March 15, 2004) (same conclusion in dicta).[4] *Id.* at 609–10. The district court expressed approval of the reasoning behind these holdings, such as the *Serrano* court's observation that joint employers retain separate identities,

his individual capacity must be dismissed because "under Title VII, individual supervisors are not subject to liability"); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995). Plaintiff has not contested that ruling in her appeal and we affirm it.

3. The district court also did not consider whether On–Site and Crystal Hills should be deemed a single employer, as opposed to a joint employer, because "it does not appear and plaintiff does not argue that On–Site and Crystal Hills constitute a single employer." *Arculeo*, 321 F.Supp.2d at 612.

4. The district court noted that the first two of these cases addressed the question as a juris-dictional one, because they were decided before the Second Circuit determined, in *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 366 (2d Cir.2000), that the question whether there are at least fifteen employees goes to the merits of a Title VII claim, rather than to the court's jurisdiction. *Arculeo*, 321 F.Supp.2d at 609 n. 8. There is presently a circuit split as to whether the fifteen-employee minimum is a prerequisite to the court's subject matter jurisdiction. *Id.* The Supreme Court recently granted certiorari in a Fifth Circuit case raising this question. *See Arbaugh v. Y & H Corp.*, 380 F.3d 219 (5th Cir.2004), *cert. granted,* —— U.S. ——, 125 S.Ct. 2246, 161 L.Ed.2d 1057 (2005).

and that potential exposure of small businesses would "discourage the informal employment arrangements upon which small businesses often depend." *Id.* at 609–10 (citing *Serrano,* 4 F.Supp.2d at 318) (internal quotation marks omitted). The district court also addressed cases in other circuits that have come to the opposite conclusion that the employees of joint employers *could* be aggregated for purposes of the fifteen-employee threshold, most notably an Eleventh Circuit case, *Virgo v. Riviera Beach Assocs., Ltd.,* 30 F.3d 1350 (11th Cir.1994), which relied heavily on the generally broad construction of the term "employer" in the statute. *Arculeo,* 321 F.Supp.2d at 610–11.

After reviewing the various authorities, the district court explained that it was "loath to depart from the line of Southern District cases." *Id.* at 611. In particular, the district court found the *Serrano* opinion convincing. *Id.* The court also observed that disallowing aggregation best comported with the Second Circuit's discussion of the legislative history and the purpose of the fifteen-employee minimum in *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1314 (2d Cir.1995). *See Arculeo,* 321 F.Supp.2d at 611. The court, therefore, granted summary judgment on the Title VII claims. Because the federal law claims furnishing the basis of federal jurisdiction were dismissed, the court dismissed the NYHRL claims, without prejudice to the plaintiff seeking relief in state courts.[5]

### Discussion

Title VII imposes liability for employment discrimination only on an "employer," which is defined by the statute as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b). The district court opinion below squarely focused on an issue which has never been resolved by this court-whether the employees of different employers may be aggregated for purposes of satisfying the fifteen-employee minimum required by Title VII under 42 U.S.C. § 2000e on the ground that these employers acted as "joint employers." We need not answer this question in order to decide the case before us. Even assuming that such aggregation is permitted by law, on the particular facts of this case aggregation would not reach the necessary threshold of fifteen employees. The question is therefore moot.

### I. Aggregation under the Single Employer and Joint Employer Doctrines

The plaintiff's argument for aggregating the employees of On–Site and Crystal Hills builds on recognized doctrines that enable an employee in certain circumstances to assert employer liability against an entity that is not formally his or her employer. These doctrines are sometimes called the "single employer" (or "single integrated employer") and the "joint employer" doctrines. The labeling can be deceptive because the terms are used in numerous contexts, such as union representation, responsibility for violations of the Fair Labor Standards Act, and, as here, Title VII liability. Notwithstanding the same label and some core similarities between those contexts, the doctrines might differ significantly in different contexts.

---

5. The NYHRL also requires that a defendant employ a minimum number of employees to be subject to liability, but it requires only four employees, rather than fifteen. *See Arculeo,* 321 F.Supp.2d at 612 (citing N.Y. Exec. Law § 292(5)).

■ In *Clinton's Ditch Cooperative Co. v. NLRB*, 778 F.2d 132 (2d Cir.1985), a suit alleging that a bottling company, which subcontracted with a trucking company, was a joint employer of the trucking company's drivers and was therefore obligated to bargain collectively with the drivers' union, this Court discussed differences between the "single employer" and "joint employer" doctrines.[6] "A 'single employer' situation exists 'where two nominally separate entities are actually part of a single integrated enterprise ....'" *Id.* at 137 (citing *NLRB v. Browning–Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1122 (3d Cir.1982)). In such circumstances, of which examples may be parent and wholly-owned subsidiary corporations, or separate corporations under common ownership and management, the nominally distinct entities can be deemed to constitute a single enterprise. *See Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240–41 (2d Cir.1995). There is well-established authority under this theory that, in appropriate circumstances, an employee, who is technically employed on the books of one entity, which is deemed to be part of a larger "single-employer" entity, may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated employer. *Id.*

■ In a "joint employer" relationship, in contrast, "there is no single integrated enterprise. A conclusion that employers are 'joint' assumes that they are separate legal entities, but that they ... handle certain aspects of their employer-employee relationship jointly." *Clinton's Ditch*, 778 F.2d at 137 (citing *Browning–Ferris*, 691 F.2d at 1122). Where this doctrine is operative, an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violations of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer. *See Clinton's Ditch*, 778 F.2d at 137; *see also Laurin*, 2004 U.S. Dist. LEXIS 4066, 2004 WL 513999, at *8.

This Court has never discussed the somewhat different, but related, question whether employees of different entities may be aggregated under either the single employer or the joint employer doctrines to satisfy Title VII's fifteen-employee threshold. District court opinions in this Circuit *have* allowed aggregation of all employees of multiple entities under the single employer doctrine, based upon a finding that those nominally distinct entities should be deemed a single integrated employer for purposes of Title VII. *See Westphal v. Catch Ball Products Corp.*, 953 F.Supp. 475, 478 (S.D.N.Y.1997) ("Assuming that Orange Point, Gallup and Catch Ball properly were considered a single employer, the three companies together had 20 employees in 1996 at the time plaintiff was terminated."); *Fernot v. Crafts Inn, Inc.*, 895 F.Supp. 668, 685 (D.Vt.1995) ("Two [ ] entities may be given single employer status such that their combined number of employees will be determinative of whether they are subject to Title VII requirements.") (quoting *Armbruster v. Quinn*, 711 F.2d 1332, 1338 (6th Cir.1983) (internal quotation marks omitted)). Arculeo has not suggested that On–Site and Crystal Hills are part of a single integrated enterprise, and therefore has not ar-

---

**6.** Because the joint employer doctrine has been well-developed in National Labor Relations Board ("NLRB") cases, we turn to such cases for guidance. We do not mean to suggest that the doctrine has an identical shape in both NLRB and Title VII contexts.

gued for aggregation of their employees pursuant to the single employer doctrine.

Some authorities have also adopted a rule permitting aggregation so as to satisfy the fifteen-employee requirement on the ground that distinct entities have acted jointly with respect to employment. *See Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1359–61 (11th Cir.1994); EEOC Compliance Manual § 2–III(B)(1)(a)(iii)(b) (May 12, 2000). Arculeo claims the benefit of this doctrine. She contends that On–Site and Crystal Hills are her joint employers. She argues for the aggregation of *all* their employees to determine whether the fifteen-employee threshold is satisfied. But the plaintiff misunderstands the doctrine. Arculeo urges us to follow the EEOC Compliance Manual, which supports aggregation in joint employer circumstances, but she misunderstands its terms.

Aggregation of employees under the joint employer doctrine would function quite differently from aggregation of employees under the single employer doctrine. In the single employer context, the court draws the conclusion that, although nominally and technically distinct, several entities are properly seen as a single integrated entity. Accordingly *all* the employees of the constituent entities are employees of the overarching integrated entity, and all of those employees may be aggregated to determine whether it employs fifteen employees. In contrast, when the circumstances of one employee's employment justify the conclusion that she is being employed jointly by two distinct employers, it does not follow that all the employees of both employers are part of an integrated entity encompassing both. A joint undertaking by two entities with respect to employment may furnish justification for adding to the employees of one employer those employees of another who are jointly employed by the first, but such joint undertaking does not furnish logical justification for adding together *all* the employees of both employers, unless the circumstances justify the conclusion that all the employees of one are jointly employed by the other.

Imagine a company in the clothing business and a temporary agency, which rents office workers on its payroll to business entities. Assume that each company has fewer than fifteen employees on its books. The clothing seller contracts with the temporary agency to have three office workers on the agency's payroll assigned to work at the clothing seller, under circumstances that might justify the conclusion that all three "loaned" office workers are jointly employed by their formal employer, the temporary agency, and the clothing seller, which supervises them. Such facts might justify adding the three borrowed employees to the employees directly employed by the clothing seller to determine the number of the clothing seller's employees for Title VII purposes. But these facts would furnish no logical justification for adding the other office "temps" on the staff of the temporary agency (assigned to work for other companies) to the number of employees of the clothing company. Neither would those circumstances justify adding the employees of the clothing company to those of the temporary agency to determine the number of the temporary agency's employees.

■ As noted, our Circuit has as yet taken no position on whether aggregation is appropriate in either the single employer or the joint employer context for purposes of determining whether the Title VII threshold is met.[7] Even assuming that

7. This court has not yet fully analyzed or described a test for what constitutes joint

our Circuit would allow aggregation in the joint employment context to meet the fifteen-employee requirement, Arculeo has not shown circumstances that would justify a finding that either On–Site or Crystal Hills should be deemed to have fifteen employees. Arculeo's claim therefore must fail regardless what position this Circuit will ultimately take on the propriety of aggregation in a joint employer situation.[8]

■ Arculeo argues that, under joint employment principles, we should aggregate in accordance with the rules described in the EEOC Compliance Manual. The Manual, however, does not endorse simply adding together all the employees of entities found to be joint employers, as may be appropriate where aggregation occurs under the single employer theory. It rather requires a detailed analysis of the number of employees attributable to each employer, either because they are formally employed or jointly employed by that employer. For example, the Manual explains, "To determine whether a respondent is covered, count the number of individuals employed by the respondent alone *and* the employees jointly employed by the respondent and other entities." EEOC Compliance Manual § 2–III(B)(1)(a)(iii)(b). It goes on to give the following example, which has considerable pertinence to our case:

> CP files a charge against ABC Corp alleging that she was subjected to religious harassment. ABC Corp. has 13 regular employees and five employees assigned by a temporary agency. ABC is covered under Title VII because it has 18 employees.

*Id.*, Example 1. It is clear in this example that, if the Manual is followed, the employees of a joint employer who can be counted for aggregation purposes are only those employees either directly or constructively employed by it. ABC has 18 employees because it has 13 employees formally employed by it and five employees attributable to it on a joint employment theory because their employer has assigned them to work at ABC. The analysis is not affected by the number of other persons employed by the temporary agency who are not assigned to work at ABC. Needless to say, the fact that the number of ABC's employees is increased by the five temporary employees furnished by the temporary agency would not provide a basis for increasing the number of employees employed at the temporary agency by adding ABC's 13 regular employees, who are not

employment in the context of Title VII, and since it is not necessary for our resolution of this case, we decline to do so here. The indicia suggesting a conclusion of joint employment may vary depending on the purpose of the inquiry. *See, e.g., Ling Nan Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 72 (2003) (describing six factors relevant to a joint employment inquiry in the context of the Fair Labor Standards Act).

8. A recent case in the Southern District of New York is somewhat illustrative. In *Nelson v. Beechwood Organization*, the plaintiff, Nelson, who drove trucks for a subcontractor, alleged that he was subject to supervision by a contractor, Beechwood, which subjected him to discriminatory adverse employment conditions. *Nelson v. Beechwood Org.*, 2004 WL 2978278 at *1, 2004 U.S. Dist. LEXIS 25622, at *1 (S.D.N.Y. December 21, 2004). Beechwood moved for summary judgment on the grounds that, inter alia, it was never Nelson's employer. Although recognizing that Nelson was technically not an employee of Beechwood and that Beechwood and Nelson's employer may have been in a traditional contractor/subcontractor relationship, the district court found uncertainty as to whether Beechwood's control of Nelson was sufficient to make him jointly employed by Beechwood, as well as by his technical employer. *Id.* 2004 WL 2978278 at *4, 2004 U.S. Dist. LEXIS 25622 at *17–*18. The court therefore denied summary judgment.

employed by the temporary agency on any rational theory.

We proceed to examine the facts of this case according to the Manual's procedure for aggregation on the basis of joint employment.[9] Because we find that even under the Manual's aggregation procedure, Arculeo has shown no basis for determining that either On–Site or Crystal Hills had fifteen employers, we need not reach the question whether aggregation is ever possible under the joint employer doctrine.

## II. Crystal Hills [10]

The payroll records of Crystal Hills, whose accuracy the plaintiff does not dispute, reveal that during the relevant time period, Crystal Hills never had more than eight employees on its payroll. Like the ABC company in the EEOC Manual's example, it also had one or more employees of On–Site (including Arculeo herself) assigned by On–Site to work in Crystal Hills's offices under its supervision, who might be considered to be jointly employed by Crystal Hills. In response to Crystal Hills's motion for summary judgment, supported by its evidence that it never had more than eight employees, Arculeo was obligated to proffer evidence which, viewed in the light most favorable to Arculeo, could increase the number of Crystal Hills employees to fifteen. *See* Fed. R. Civ. Proc. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.").

The evidence that On–Site employed more than seven people is irrelevant. On–

9. By citing to the EEOC Compliance Manual, we do not mean to suggest that we are adopting the Manual's position on this point. *See United States v. City of New York*, 359 F.3d 83, 93 (2d Cir.2004) (deeming the interpretations of the EEOC Compliance Manual to be "entitled to respect ... only to the extent that [they] have the power to persuade") (quoting *Christensen v. Harris County*, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (internal quotation marks omitted)). What we can determine is that if we were to allow aggregation under the joint employer doctrine, only those persons actually jointly employed could be counted in addition to regular employees for aggregation purposes. In making this determination, we again observe that Arculeo never contended that On–Site and Crystal Hills were a single employer. Our discussion of what we would require for aggregation of employees for purposes of satisfying the requirements of 42 U.S.C. § 2000e under the joint employer doctrine, were we to accept the argument that aggregation is appropriate in some circumstances, is in no way intended to suggest how we would approach aggregation under the very different circumstance of two entities that function as a single employer. For example, the EEOC Compliance Manual seems to suggest that in the single employer context, unlike in the joint employer context, once the determination is made that multiple entities constitute a single employer, *all* of the employees of all of those entities should be aggregated for purposes of Title VII's fifteen-employee requirement. *See* EEOC Compliance Manual § 2–III(B)(1)(a)(iii)(a) ("The separate entities that form an integrated enterprise are treated as a single employer for purposes of both coverage and liability.").

10. It is not clear whether the Crystal Hills corporation should be deemed to be a defendant in this case. The complaint does not name Crystal Hills otherwise than as a doing-business name of Sanford Pankin, who was explicitly named as a defendant. On the other hand, in the district court, counsel for Pankin seem to have implied that they were appearing and making motions on behalf of the Crystal Hills corporation, as well as Pankin. Because we determine that even assuming Crystal Hills is a defendant in this case, the Title VII claims against it were properly dismissed, we need not resolve that question here.

Site and Crystal Hills were not a single integrated employer, and Arculeo does not contend that they were. On–Site employees would not be attributable to Crystal Hills unless there was a basis for deeming Crystal Hills to be their joint employer. Had Arculeo put forth evidence that six On–Site employees in addition to herself were assigned to work under Crystal Hills's supervision in such a manner as would satisfy the requirements of joint employment, we might then be required to decide whether this Circuit permits aggregation under the joint employer doctrine. Arculeo, however, has made no such showing.

We therefore need not consider whether we will adopt the principles of the EEOC Manual for aggregation of employees on the basis of joint employment, because even if we did adopt those principles as the law of the Circuit, we would nevertheless be compelled to conclude that Crystal Hills was not within the Title VII definition of "employer."

## III.  On–Site

■ In affidavits supporting On–Site's motion for summary judgment, On–Site showed (and Arculeo did not dispute) that on its own payroll it employed fewer than fifteen employees. In order to raise a threshold question of material fact as to whether On–Site could nevertheless be found to be an "employer" under Title VII, Arculeo needed to submit evidence which, viewed in the light most favorable to her, would support a finding increasing On–Site's number of employees to fifteen. Arculeo seems to argue that the joint employment relationship between On–Site

and Crystal Hills would justify such a finding. The argument is misconceived. It is true Arculeo showed that some of On–Site's employees, in particular herself, might be deemed to have been jointly employed by Crystal Hills. It does not follow, however, that any Crystal Hills employees should be deemed to be jointly employed by On–Site. At least in the NLRB context, we have identified a variety of factors, such as exercise of authority to hire, fire, and discipline, control over pay and insurance, and supervision, which can bear on whether an entity, which is not the formal employer, may be considered a joint employer. *Clinton's Ditch*, 778 F.2d at 138–39.[11] Arculeo in any event submitted no evidence that On–Site exercised any kind of authority over any employees of Crystal Hills.

In seeking to add employees of Crystal Hills to those of On–Site in order to determine the number of On–Site's employees, Arculeo once again is invoking a rule which some courts have found useful in the context of aggregation for a single integrated employer. But as noted above, the joint employer theory is quite different. Under the formulation of the EEOC Manual, there is no basis for increasing the number of On–Site's employees beyond those it formally employs unless a factual basis is shown for deeming persons not technically in its employ to be sufficiently under its supervision or authority to be deemed its joint or constructive employees. No such factual basis has been shown.

Once again, we need not decide whether to permit aggregation under a joint employer theory. Even if we were to allow aggregation in the joint employment con-

---

11. We have never ruled on whether such an approach may be used in the Title VII context either to visit Title VII liability on a constructive employer which employs more than fifteen persons or to satisfy Title VII's fifteen-employee threshold, and do not do so now. We note however that the policy considerations affecting these two questions may be different.

text, Arculeo nevertheless fails to raise a question of material fact as to whether On–Site employed fifteen persons.

### Conclusion

For the foregoing reasons, the judgment of the district court granting defendants' motion for summary judgment on plaintiff's Title VII claims is AFFIRMED. Because the plaintiff's federal claims against the defendants were properly dismissed on summary judgment, the district court's dismissal, without prejudice, of plaintiff's NYHRL claims is AFFIRMED.