NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0810n.06

No. 10-5323

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Dec 05, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| WILLIAM SANFORD, | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| MAIN STREET BAPTIST CHURCH | ) | DISTRICT OF KENTUCKY |
| MANOR, INC. and | ) | |
| SOUTHEASTERN MANAGEMENT | ) | |
| CENTER, INC., | ) | **O P I N I O N** |
| | ) | |
| **Defendants-Appellees.** | ) | |
| _____ | ) | |

Before: MARTIN, MOORE, and COOK, Circuit Judges.

KAREN NELSON MOORE, Circuit Judge. Plaintiff-Appellant William Sanford appeals the district court's grant of summary judgment in favor of Defendants-Appellees Main Street Baptist Church Manor, Inc. ("the Manor") and Southeastern Management Center, Inc. ("Southeastern") on his sexual-harassment and retaliation claims under Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act ("KCRA"). The district court held that neither defendant qualified as an "employer" under the federal or state anti-discrimination laws—Southeastern because it was not Sanford's formal employer and the Manor because it did not have the statutorily required number of employees. Because the district court abused its discretion in reversing its earlier holding that Southeastern could be liable as a joint employer, we REVERSE the grant of summary judgment to Southeastern and REMAND for further proceedings consistent with this opinion. Because Sanford

has failed to show that the Manor satisfies the numerosity requirement, we AFFIRM the grant of summary judgment to the Manor.

## I. BACKGROUND

William Sanford worked maintenance at the Main Street Baptist Church Manor Apartments, a 64-unit apartment building operated by the Manor in Lexington, Kentucky, from 2000 to 2005. He alleges that he was the victim of sexual harassment by his supervisor, Marla Carter, in the spring of 2004. Sanford contends that Carter made a series of sexual advances and, when he rebuffed these advances and reported the alleged harassment, began issuing write-ups and negative reports regarding his job performance. The Manor fired Carter in 2004 and, in 2005, Sanford resigned after his job duties and salary were reduced.

Sanford brought suit under Title VII, 42 U.S.C. § 2000e-2, and the KCRA, Ky. Rev. Stat. § 344.040, against the Manor and Southeastern, a property-management company that works with several housing providers in central Kentucky. Both defendants moved for summary judgment on the grounds that they did not qualify as Sanford's or Carter's employer for Title VII or KCRA purposes.

Central to this case is the relationship between three entities: the Manor, Southeastern, and non-party Main Street Baptist Church ("the Church"). The Manor is a not-for-profit corporation formally governed by its members, all of whom are also members of the Church. The members select an eleven-member board of directors, which in turn elects four officers. Under the Manor's Articles of Incorporation, the Church's pastor serves ex officio as a director, and all other officers

and directors must be members of the Church. At the time of the alleged harassment, two of the directors were Church ministers. None of the officers or directors are paid for their services, and most either have full-time jobs elsewhere or are retired. The board meets on an as-needed basis, which tends to be every three to five months.

Since 1985, the Manor has contracted with Southeastern to assist with the day-to-day operations of the apartment building and to ensure compliance with HUD regulations for low-income housing providers. According to the Management Plan, Southeastern's duties include providing accounting services; hiring, paying, supervising, and discharging personnel; maintaining the property; advertising to potential residents; and otherwise "assum[ing] the prime responsibility for all facets of operations." R. 26-5 (Mgmt. Plan at 1-3). Jean Peyton, Southeastern's Director of Retirement Housing, serves as the management agent for the Manor. She serves in the same capacity for other properties.

Sanford and Carter were formally employed by the Manor, which in 2003, 2004, and 2005 had between four and seven employees on its payroll.

The district court initially held that Southeastern and the Manor were joint employers and that, consequently, Southeastern could be liable even though it was not Sanford's or Carter's formal employer and the Manor could aggregate its own formal employees with all of Southeastern's employees to meet the numerosity requirements of Title VII and KCRA. However, the court subsequently granted summary judgment to both defendants on the merits of Sanford's claims.

This court reversed and remanded, holding that the district court erred in both its aggregation analysis and in part of its grant of summary judgment. *Sanford v. Main St. Baptist Church Manor, Inc.*, 327 F. App'x 587, 588-89 (6th Cir. 2009) (*Sanford I*). We instructed the district court to conduct an individualized determination as to which of Southeastern's employees could be attributed to the Manor for purposes of evaluating whether the Manor met the numerosity requirement. After remand, the district court reversed its earlier holding on joint-employer status and granted summary judgment to both defendants on the grounds that neither qualified as an "employer" under federal or state law.

On appeal, Sanford argues that the district court erred in reconsidering its earlier determination regarding joint-employer status for Southeastern. Sanford argues that the district court lacked the authority to revisit that holding and that, even if it did have such authority, the new conclusion was incorrect. He further contends that summary judgment was inappropriate because the record presents issues of fact as to whether the Manor met the numerosity requirement on its own or through aggregation. Finally, Sanford argues that both defendants could still be liable even if neither of them was his employer for Title VII or KCRA purposes.

## II. ANALYSIS

### A. Standard of Review

This court reviews de novo a district court's grant of summary judgment, *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011), and will affirm "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law,"

Fed. R. Civ. P. 56(a). In reviewing the facts, we make all inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[E]mployment status is a mixed question of law and fact." *Lilley v. BTM Corp.*, 958 F.2d 746, 750 n.1 (6th Cir. 1992). In the absence of disputed material facts or the possibility of conflicting inferences to be drawn from undisputed facts, employment status is a question for the court to resolve as a matter of law. *Id.*

## B. Employer Liability

Employers are subject to Title VII only if they have at least fifteen employees on each working day for twenty or more calendar weeks in either the year in which the alleged discrimination occurred or the preceding year. 42 U.S.C. § 2000e(b). Under Kentucky law, the employer must have at least eight employees for the same period. Ky. Rev. Stat. § 344.030(2). The numerosity threshold is an element of the plaintiff's case rather than a jurisdictional requirement. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 504 (2006).

Entities that do not otherwise meet the definition of employer (either because they do not formally employ the plaintiff or do not meet the numerosity requirement) may still face liability through the single-employer or joint-employer doctrines. *E.g.*, *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993 (6th Cir. 1997).[1] Application of these doctrines can remove two different obstacles to liability. First, an entity that is not the plaintiff's formal employer may be

---

[1]These doctrines originated in the labor-relations context, but have been adopted in the civil-rights context as well. *Swallows*, 128 F.3d at 993 n.3.

treated under these doctrines as if it were the employer for purposes of employment laws such as Title VII. Second, if the entity is already a formal employer, it can satisfy an otherwise unmet numerosity requirement by aggregating its own employees with the individuals under its joint employ. Whether an entity can be treated as if it were the formal employer and whether a formal employer can meet numerosity though aggregation are "somewhat different, but related, question[s]." *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005).

Under the single-employer doctrine, "two nominally independent entities are so interrelated" that all of the employees of one are attributed to the other. *Swallows*, 128 F.3d at 993 n.4. The joint-employer doctrine involves a business that maintains sufficient control over some or all of the formal employees of another business as to qualify as those employees' employer; unlike in the single-employer context, the two businesses are in fact independent. *Id.* With a single employer, all employees are aggregated to determine whether the numerosity requirement has been met. *Arculeo*, 425 F.3d at 200. With joint employers, only the employees over whom the first employer maintains sufficient control are aggregated with its own formal employees. *Id.*

Because Southeastern is not the formal employer of Sanford or Carter and the Manor does not by itself meet the numerosity requirements of federal or state law,[2] Sanford relies on these doctrines to subject the defendants to liability. Specifically, he argues that the joint-employer

---

[2]Sanford contends that an issue of fact exists as to whether the Manor meets the numerosity requirement on its own, an issue we address below.

doctrine should apply to Southeastern and that the single-employer doctrine should apply to the Manor.[3]

### 1. Southeastern

One entity is the joint employer of another entity's formal employees, and thus liable under federal and state anti-discrimination laws, if the two "share or co-determine those matters governing essential terms and conditions of employment." *Carrier Corp. v. NLRB*, 768 F.2d 778, 781 (6th Cir. 1985) (internal quotation marks omitted). The major factors in this determination are the ability to hire, fire, and discipline, affect compensation and benefits, and direct and supervise performance. *See Sanford I*, 327 F. App'x at 595.

Although Sanford and Carter were formal employees of the Manor, Sanford argues that Southeastern was a joint employer such that it can face liability for Sanford's sexual-harassment and retaliation claims. The district court initially agreed, but reversed its decision after our remand after determining that the Manor did not exercise sufficient control over any Southeastern employees. Sanford argues that the district court's reconsideration of its earlier holding violated the mandate rule and, alternatively, that its new conclusion was incorrect.

The issue of Southeastern's status as a joint employer of Sanford was not within the scope of our remand; indeed, Southeastern did not even cross-appeal the district court's original decision holding that it was a joint employer. Instead, our remand focused on the distinct issue of whether

---

[3]Sanford does not appeal the district court's decision that the Manor is not a joint employer of any of Southeastern's employees for aggregation purposes.

the Manor was a joint employer of some or all of Southeastern's employees such that those employees would count towards satisfying the numerosity requirement for the Manor. Unlike the Manor, Southeastern's liability is not contingent upon aggregation because Southeastern already meets the numerosity requirement; nor is the Manor's ability to control Southeastern's employees relevant to Southeastern's status as a joint employer. Moreover, Southeastern and the Manor can be joint employers of the Manor's employees without being joint employers of Southeastern's employees. In short, we issued a limited mandate instructing the district court to answer one question—whether the Manor was a joint employer of any of Southeastern's employees and thus could meet the numerosity requirement by including those employees within the Manor's employee count—and that court answered a different question—whether Southeastern was a joint employer of Sanford.[4]

Because the issue of whether Southeastern was Sanford's joint employer was not presented to us and we did not address it on the prior appeal, however, the mandate rule does not strictly apply as a bar to the district court's reconsideration of its earlier ruling. *See United States v. Mendez*, 498 F.3d 423, 426 (6th Cir. 2007) (the mandate rule applies when an issue was "expressly or impliedly decided by a superior court") (quoting *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994)). Nonetheless, the district court's decision to revisit the issue of Southeastern's joint-employer status

---

[4]Because the two questions of whether the Manor could include Southeastern employees in its employee count and whether Southeastern was a joint employer of Sanford are distinct, the district court also erred as a substantive matter in limiting its analysis to the Manor's relationship to Southeastern's employees but then concluding that neither entity was a joint employer as to any of the other's formal employees.

was an abuse of discretion. The district court did not explain why it was reversing its earlier decision, and nothing in our prior opinion or our remand order undermined the analysis in that decision. The issue was not appealed, not included in the remand, not mentioned in the district court's own post-remand order for supplemental briefing, and not briefed by the parties. The parties thus had no notice that the district court might reconsider an issue that was last briefed and ruled upon two and a half years earlier.

Moreover, Southeastern should not be allowed to benefit from the district court's sua sponte reconsideration when Southeastern failed to raise the issue on cross-appeal in the first instance. Indeed, Southeastern would have been foreclosed from raising the issue itself on remand, because the mandate rule also "bars challenges to a decision made at a previous stage of the litigation which could have been challenged in a prior appeal, but were not." *Rouse v. DaimlerChrysler Corp. UAW Non-Contributory Plan*, 300 F.3d 711, 715 (6th Cir. 2002) (citing *United States v. Adesida*, 129 F.3d 846, 849-50 (6th Cir. 1997)); *see also Adesida*, 129 F.3d at 850 ("[I]t would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost." (quoting *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981) (internal quotation marks omitted)).

Because the district court's decision to revisit the issue of whether Southeastern was Sanford's joint employer was an abuse of discretion, we reverse the grant of summary judgment to Southeastern and remand for further proceedings consistent with this opinion.

### 2. The Manor

Sanford challenges the district court's holding that the Manor lacked the requisite number of employees to face liability under Title VII or the KCRA. He first argues that issues of fact exist as to the Manor's own employee count. In addition, he contends that the single-employer doctrine enables the Manor to aggregate with either the Church or Southeastern to meet the numerosity requirement.[5]

### a. The Manor Itself

Based on the Manor's list of the employees on its payroll for each month in 2004 and 2005 and an affidavit from the Manor Board President as to 2003, the district court concluded that "during the 2003 and 2004 calendar year, the Manor employed no more than six employees for twenty weeks or more, and that during the 2005 calendar year, the Manor employed no more than four employees for twenty weeks or more." R. 52 at 2 (Nov. 20, 2009 Dist. Ct. Op.).

The district court appears to have misstated the proper standard for determining whether the Manor meets the numerosity requirement. The law does not require that the same eight (or fifteen) employees each work for twenty weeks, but rather that at least eight (or fifteen) employees work

---

[5]In his brief, Sanford argues that the Manor and Southeastern were an "integrated enterprise," a concept that he presents as distinct from either the joint-employer or single-employer doctrine. However, neither caselaw nor the EEOC Compliance Manual treat "integrated enterprise" as a distinct doctrine, but instead use the term interchangeably with "single employer." *See Swallows*, 128 F.3d at 993 ("[C]ourts examine whether two entities are so interrelated that they may be considered a 'single employer' or an 'integrated enterprise.'"); EEOC Compliance Manual Section 2-III(B)(1)(a)(iii)(a) ("An integrated enterprise is one in which the operations of two or more employers are considered so intertwined that they can be considered the single employer of the charging party.").

during each of twenty weeks, regardless of how many weeks any given employee works. Nonetheless, Sanford has not shown that, under the proper standard, the result would have been different. After a full opportunity to conduct discovery, he has offered no evidence that the Manor had employees on its payroll that it did not identify because they worked less than twenty weeks.[6]

Sanford thus must show that the Manor had more employees than those individuals officially on payroll. Sanford correctly notes that payroll is not the exclusive means of counting employees. *See Bryson v. Middlefield Volunteer Fire Dep't, Inc.*, 656 F.3d 348, 352-53 (6th Cir. 2011). What matters instead is the existence of an employment relationship, as defined by the traditional principles of agency law. *Id.*[7]

Sanford identifies three groups of potential employees not on payroll—residents of the apartment building, volunteers from the Church, and board members. However, Sanford offers no evidence that the relationship between the Manor and any of these potential employees carries the traditional indicia of employment. Therefore, the Manor by itself does not satisfy the numerosity requirement.

---

[6]Even counting Clifton Gay and Anthony Thompson, the two individuals who Sanford claims worked for the Manor for longer periods than they were listed on payroll, for all of 2004, the Manor had eight employees for, at most, twelve weeks that year.

[7]Factors include the duration of the relationship, skill required, location of the work, and method of payment (if any), as well as the putative employer's ability to control the manner in which the work is performed, assign additional projects, and exercise discretion over when and how long to work. *Bryson*, 656 F.3d at 352 (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323-24 (1992)).

### b. Single Employer: the Church/the Manor

The employees of two or more entities can be aggregated for numerosity purposes if the entities effectively operate as a single employer. In making this determination, courts consider factors such as interrelation of operations, common management, centralized control over labor relations and personnel, and common ownership or financial control. *Swallows*, 128 F.3d at 993-94 (citing *York v. Tenn. Crushed Stone Ass'n*, 684 F.2d 360, 362 (6th Cir. 1982)). The presence or absence of any of these factors is not conclusive, but "control over labor relations is a central concern." *Id.* at 994 (citing *Armbruster v. Quinn*, 711 F.2d 1332, 1337-38 (6th Cir. 1983)).

None of the elements of interrelatedness identified in *Swallows*—common offices, common record keeping, shared bank accounts and equipment—are present here. Although the Manor's 2006 filing with the Secretary of State lists the Church's address as its principal place of business, R. 22-4, Sanford acknowledges in the Complaint that the Manor's office is located elsewhere, *see* R. 1-3 at 1.

Sanford has shown some evidence of common management, as the Church's Pastor serves as the Manor's Chairman of the Board and another minister serves as Board President. This type of arrangement is not always enough by itself to meet the second factor, however. *See EEOC v. Wooster Brush Co. Employees' Relief Ass'n*, 727 F.2d 566, 572 (6th Cir. 1984) (finding no common management even though the President and CEO of one entity served on the board of directors of a second entity). Each director has an equal vote in Manor business and nine of the eleven board members have no employment or pecuniary relationship with the Church.

Sanford has failed to show that the Church has any role in the Manor's personnel matters, the "central concern" of the single-employer doctrine. *Swallows*, 128 F.3d at 994. The Church has no authority to hire or fire Manor employees and does not pay their wages and benefits. Sanford points out that Carter's termination notice is on Church letterhead, but it is signed by the Pastor, who is chairman of the Manor's board, and by the Manor's board.

Finally, the Church has no ownership interest in the Manor and the two entities do not share finances. Neither is a sham corporation, and without evidence of a sham, the fourth factor is not met. *Id.* at 995 (citing *Wooster Brush*, 727 F.2d at 572).

At most, Sanford has presented some evidence of one of the four factors. Accordingly, he has not met his burden under the single-employer doctrine and we will not aggregate Church employees with the Manor's employees to determine if the Manor satisfies the numerosity requirement.

### c. Single Employer: Southeastern/the Manor

Although Sanford consistently argued that Southeastern and the Manor were joint employers, he did not raise the additional argument that the two entities were a single employer or integrated enterprise until his post-remand supplemental brief in the district court. The issue on remand was whether the Manor could aggregate Southeastern's employees with the Manor's own employees under the joint-employer doctrine, and the district court's order for supplemental briefing was accordingly limited to that issue. The joint-employer and single-employer doctrines are "analytically distinct," *Swallows*, 128 F.3d at 993 n.4. Because Sanford failed to raise the issue of whether the

13

Manor and Southeastern were a single employer in a timely manner and the issue was not within the scope of the remand, the argument is waived.

## C. Non-Employer Liability

Finally, Sanford argues that Southeastern or the Manor may be liable even if they do not qualify as employers. According to Sanford, an entity need not be an employer to face liability for retaliation under the KCRA, a non-employer can be liable either as the agent of an employer or for interfering with the plaintiff's relationship with an employer, and a non-employer can aid or abet the discriminatory acts of an employer. These claims are untimely and thus have been waived.

If, as he contends, Sanford pleaded a KCRA retaliation claim in his complaint, he was hardly artful in doing so. In Sanford's complaint, "Retaliation" is a distinct count from "State Law Unlawful Employment Practice" and cites only federal law. R. 1-3 at 5. Although we do not focus solely on labels when evaluating the adequacy of a complaint on a motion to dismiss, *Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001), the standard for determining what claims a plaintiff has raised is generally less forgiving at the summary judgment stage, *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 787-88 (6th Cir. 2005).

*Tucker* rejected a claim raised for the first time in opposition to summary judgment. *Id.* at 788-89. Sanford did not address his purported KCRA retaliation claim until his post-remand supplemental brief in the district court, which was filed well after the completion of discovery and the consideration of summary judgment motions. Until that point, each party's briefs had focused on the defendants' status as employers or the merits of Sanford's claims.

14

Sanford raised the interference and aider/abetter claims for the first time on appeal. They were not briefed by the parties or addressed by the district court and are thus waived. Although Sanford briefly mentioned the possibility of agency liability in his response to the Manor's Motion to Reconsider and his post-remand Motion to Alter or Amend the Judgment, issues raised for the first time in such motions are not preserved for appeal. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008).

## III. CONCLUSION

The district court abused its discretion in reversing its earlier decision that Southeastern was Sanford's joint employer and thus could face liability under Title VII or the KCRA. Therefore, we reverse the grant of summary judgment to Southeastern and remand for further proceedings consistent with this opinion. Because Sanford has not shown that the Manor meets the numerosity requirement of Title VII or the KCRA, however, we affirm the grant of summary judgment to the Manor.

**REVERSED** in part and **AFFIRMED** in part.